**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

FEB 2 6 2004

Michael N. Milby
Clerk of Court

ACEROS Y LAMINADOS SIGOSA ,  :
S.A. DE C.V.,                :
                             :
                    Plaintiff, :    Civil Action No. B-04-031
                             :
DUFERCO S.A. and DUFERCO STEEL, :
INC.,                        :
                             :
                    Defendants. :
_____ :

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

**Preliminary Statement**

Defendants Duferco S.A. and Duferco Steel, Inc. ("Steel") (collectively, "Duferco")

submit this memorandum in support of their motion, pursuant to the Federal Arbitration Act, 9

U.S.C. §§ 1, et seq., and the Convention On The Recognition and Enforcement of Foreign

Arbitral Awards, 9 U.S.C. §§ 201, et seq. (the "Convention"), for an Order compelling

arbitration of all claims asserted in this action before the International Chamber of Commerce

(the "ICC") in Geneva, Switzerland and dismissing this action.

As more fully set forth in the First Amended Original Petition, this action arises out a

written contract of sale dated March 20, 2002 between defendant Duferco S.A., as seller, and

plaintiff Aceros Y Laminados Sigosa S.A. De CV ("Aceros"), as buyer (the "Contract of Sale").[1]

Pursuant to the Contract of Sale, Duferco S.A. sold to Aceros approximately 15,000 metric tons

of Prime Rolled Steel Billets. Section 15 of the Contract of Sale contained a standard ICC

arbitration clause which provides as follows:

THE PARTIES WILL    ENDEAVOUR TO THE FULLEST
EXTENT TO SETTLE ANY CONTROVERSY ARISING OUT
OF THE PRESENT CONTRACT IN AN AMICABLE WAY. IN
CASE IT IS NOT POSSIBLE TO FIND AN AMICABLE
SETTLEMENT, THEN THE CONTROVERSY WILL BE
RESOLVED THROUGH ARBITRATION TO BE CONDUCTED
IN    ACCORDANCE    WITH    CONCILIATION    AND
ARBITRATION    RULES    OF    THE    INTERNATIONAL
CHAMBER OF COMMERCE. PLACE OF ARBITRATION:
GENEVE. THE AWARD OF THE ARBITRATORS SHALL BE
FINAL AND BINDING ON THE PARTIES (the "Agreement to
Arbitrate").[2]

As hereafter detailed, arbitration of the claims asserted by Aceros against Duferco S.A. is

mandated by the plain language of the Agreement to Arbitrate, the provisions of the Convention,

and the strong public policy in favor of arbitration. Further, and because Aceros is seeking to

hold Steel liable for the obligations of Duferco S.A. under the Contract of Sale, Aceros must also

arbitrate its claims against Steel, despite the fact that Steel is not a party to the Contract of Sale.

Accordingly, defendants' motion compelling arbitration of all claims before the ICC in Geneva,

Switzerland, and dismissing this action should be granted.

## **Nature of Action and Prior Proceedings**

Aceros, a company organized and existing under the laws of Mexico, commenced this action in

September, 2004 by the filing of an Original Petition in the 357th Judicial District Court,

Cameron County, Texas (the "State Court Action"). Service of process of the Original Petition

was not effected upon either of the defendants. On January 20, 2004, Aceros filed a First

Amended Original Petition in the State Court Action, and on February 2, 2004, service of the

First Amended Original Petition was made upon CT Corporation as the statutory agent for Steel.

---

[1] A copy of the First Amended Original Petition is annexed to the accompanying Affidavit of Norton A. Colvin, Jr.,
sworn to February 20, 2004 ("Colvin Aff."), as Exhibit A.

[2] A copy of the Contract of Sale is annexed to the First Amended Original Petition as Exhibit A.

On or about January 30, 2004, service of the First Amended Original Petition was made upon the Secretary of State of the State of Texas, as the purported agent of Duferco S.A., a corporation organized and existing under the laws of Switzerland with its principal place of business in Lugano, Switzerland.

On February 23, 2004, defendants removed the State Court Action pursuant to Sections 202, 203 and 205 of the Convention. As detailed in the Notice of Removal, the Agreement to Arbitrate is an agreement which falls under the Convention in that it arises out of a commercial legal relationship that is not one entirely between citizens of the United States. Pursuant to § 203 of the Convention, the district courts have original jurisdiction over this action, and the State Court Action is one which defendants may remove in its entirety to this Court pursuant to 9 U.S.C. § 205.[3]

As more fully alleged in the First Amended Original Petition, Aceros claims that the material that it purchased pursuant to the Contract of Sale was defective. Although Steel is not a party to the Contract of Sale, Aceros alleges in conclusory fashion that Duferco S.A. and Steel are a "joint enterprise" or "common enterprise" or "venture" and, as such, are allegedly jointly and severally liable for breach of the Contract of Sale. With respect to the Agreement to Arbitrate, Aceros alleges that it is "ambiguous" in that it provides that the dispute in question will be resolved under the Conciliation and Arbitration Rules of the ICC, but "does not say the International Chamber of Commerce will conduct the arbitration."[4]

---

[3] A copy of the Notice of Removal is annexed to the Colvin Affidavit as Exhibit B.

[4] *See* First Amended Original Petition, Par. 8. Significantly, Aceros has entered into two prior contracts of sale with Duferco S.A. for the purchase of the same material on substantially the same terms and conditions. Each of these prior contracts contained the **identical** Agreement to Arbitrate that is contained in the Contract of Sale. Copies of these prior contracts are annexed to the Colvin Affidavit as Exhibit C.

## ARGUMENT

### POINT I

### THE AGREEMENT TO ARBITRATE
### IS VALID AND BINDING

As stated by the Supreme Court in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 631, 106 S.Ct. 3346, 3356, 87 L.Ed.2d 444 (1985), there is a "strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions." That presumption is reinforced by "the emphatic federal policy in favor of arbitral dispute resolution." *Id.* In light of that policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. V. Mercury Constr. Corp.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

The strong federal policy in favor of arbitration is not only embodied in the Convention, but applies with "special force in the field of international commerce." *Mitsubishi Motors, supra,* 473 U.S. at 631. Here, Aceros and Duferco S.A. are multinational corporations which engaged in a transaction in the field of international commerce and expressly agreed to have their disputes resolved before the ICC. Manifestly, this is precisely the type of dispute to which this strong federal policy applies.[5]

Defendants removed the State Court Action pursuant to Sections 202, 203 and 205 of the Convention, a statute adopted by Congress pursuant to the treaty power under the Constitution. *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oit. Co. (Pemex),* 787 F.2d 1140 (5th Cir. 1985). The purpose of the Convention is to encourage the resolution of commercial disputes through arbitration, and to facilitate the enforcement of arbitration agreements and awards in the United States and throughout the world. *Meadows Indem. Co. Ltd. v. Baccala and Shoop Ins.*

*Services, Inc.,* 760 F. Supp. 1036 (E.D.N.Y. 1991). Because the purpose of the Convention is identical to the strong federal policy in favor of dispute resolution through arbitration, the Convention is to be broadly interpreted to effectuate its recognition and enforcement purposes. *Bergesen v. Joseph Muller Corp.,* 710 F.2d 928, 933 (2d Cir. 1983).

In order to determine whether a dispute is subject to the Convention, there are four questions that must be resolved: (1) is there an agreement in writing to arbitrate the subject of the dispute; (2) does the agreement to arbitrate provide for arbitration in the territory of a signatory of the Convention; (3) does the agreement to arbitrate arise out of a legal relationship which is considered commercial; and (4) is a party to the agreement not any American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states. *Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 959 (10th Cir. 1992); *Hytran Corp. v. Man Nutzfahrzeuge Aktiengesellschaft,* 1995 WL 443926 at * 2 (No. 95 Civ. 2254, N.D. Ill. July 24, 1995). Here, all four criteria under the Convention are met. Accordingly, the Court has a "mandatory duty to recognize and enforce" the Agreement to Arbitrate. *Black & Veatch International Co. v. Wartsila NSD North America, Inc.,* 1998 WL 953966 at * 3 (No. CIV.A. 97-2556, D. Kan. Dec. 17, 1998), citing *Riley, supra,* 969 F.2d at 959.

Finally, Aceros' assertion that the Agreement to Arbitrate is "ambiguous" because it does not state that the ICC will "conduct the arbitration" is without merit. (Colvin Aff., Exh. A, par. 8). The Agreement to Arbitrate expressly provides that the arbitration of this dispute will be "conducted in accordance with the Conciliation and Arbitration Rules of the International Chamber of Commerce (the "ICC Rules")." The ICC Rules set forth all of the rules and

---

[5] The International Chamber of Commerce is a world renown organization dedicated to the resolution of international commercial disputes through arbitration.

procedures that will govern the conduct of the arbitration between the parties, including who will "conduct the arbitration."[6]

Pursuant to Article I of the ICC Rules, the International Court of Arbitration of the ICC (the "ICC Court") is the body that is empowered to administer the ICC Rules. Among the rules that are enforced by the ICC Court are those that determine the procedure for selecting the Arbitral Tribunal, which is composed of one or more arbitrators that will hear and determine the dispute. As is readily apparent, the objection raised by Aceros to the Agreement to Arbitrate is a makeweight that should be categorically rejected by this Court.

Finally, and to remove any possible doubt as to the enforceability of the Agreement to Arbitrate, the substantially same provision has been repeatedly upheld by the courts. *See e.g. Standard Bent Glass Corp. v. Glassrobots Oy,* 333 F.3d 440, 443 (3rd Cir. 2003) ("All disputes arising in connection with the contract shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce . . . ."); *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 720 (9th 1999) ("All disputes arising in connection with this Agreement shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce . . . ."); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 318 (4th Cir. 1988) ("All disputes arising in connection with the present contract shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce . . . ."). These arbitration clauses, together with the Agreement to Arbitrate, are based upon the "Standard ICC Arbitration Clause," which is set forth in the ICC Rules. (Colvin Aff., Exh. D) Accordingly, the Agreement to Arbitrate is valid and binding and must be enforced.

---

[6] A copy of the ICC Rules, which are available on-line, are annexed to the Colvin Affidavit as Exhibit D.

## POINT II

## ACEROS' CLAIMS AGAINST DUFERCO STEEL
## ARE SUBJECT TO MANDATORY ARBITRATION

Although arbitration is a creature of contract, there are many situations in which a non-party to an arbitration agreement can be forced to arbitrate or may compel arbitration of claims asserted against it. Here, Aceros seeks to hold Steel, a non-party to the Contract of Sale, liable for the alleged breach of that agreement, based upon bald and conclusory allegations that Steel and Duferco S.A. are part of a joint venture or common enterprise. Because Aceros is seeking to hold Steel responsible for obligations arising under the Contract of Sale which contains a mandatory Agreement to Arbitrate, Aceros must arbitrate its claims against both Duferco S.A. and Steel.

In *Hughes Masonry Co. v. Greater Clark County School Building Corp.*, 659 F.2d 836 (7th Cir. 1981), plaintiff Hughes Masonry brought an action against multiple defendants arising out of a construction contract which contained an agreement to arbitrate. James Associates, one of the defendants and the construction manager of the project, but not a signatory to the construction agreement containing the arbitration clause, sought to compel arbitration and agreed to participate in and to be bound by the arbitration of the disputes. However, Hughes Masonry refused to arbitrate, claiming that James Associates was "not entitled to invoke the arbitration provision of the Hughes-Clark agreement since it is not a party to that agreement." 659 F.2d at 838.

In unanimously rejecting the arguments advanced by Hughes Masonry, the Court of Appeals for the 7th Circuit held that Hughes Masonry was equitably estopped from repudiating the arbitration clause contained in the construction contract upon which Hughes Masonry relied in support of its claims. In reaching this conclusion, the Court found that "the very basis of the

Hughes' claim against [James Associates] is that [James Associates] breached the duties and responsibilities assigned and ascribed to [James Associates] by the agreement between Clark and Hughes." 659 F.2d at 838.  In language which is particularly applicable to the facts of the instant case, the Court stated as follows:

> In substance, however, Hughes is attempting to hold [James Associates] to the terms of the Hughes-Clark agreement. Hughes' complaint is thus fundamentally grounded in [James Associates'] alleged breach of the obligations assigned to it in the Hughes-Clark agreement. Therefore, we believe it would be manifestly inequitable to permit Hughes to both claim that [James Associates,] is liable to Hughes for its failure to perform the contractual duties described in the Hughes-Clark agreement and at the same time deny that [James Associates] is a party to that agreement in order to avoid arbitration of claims clearly within the ambit of the arbitration clause. In short, [plaintiff] cannot have it both ways. [I]t cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage [citing *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y. 1966)]. (Emphasis Supplied)

659 F.2d at 838-839.

Hughes Masonry stands for the unassailable proposition that where, as here, a party asserts claims arising under a contract containing an agreement to arbitrate, that party is estopped from denying or repudiating the arbitration agreement even as against a defendant which is not a party to the underlying contract. As observed by the Court in *McBro Planning and Development Company v. Triangle Electrical Construction Company, Inc.*, 741 F.2d 342 (11th Cir. 1984), it is the relationship between the claims alleged and the non-signatory's supposed obligations and duties in the underlying contract giving rise to such claims, that determines whether such claims are subject to arbitration. Where, as here, such claims are "intimately founded in and intertwined with the underlying contract obligations," the party asserting such claims will be equitably estopped from denying the agreement to arbitrate. 741 F.2d at 344.

These salutary principles were applied in *Sunkist Soft Drinks, Inc. v. Sunkist. Growers, Inc.*, 10 F.3d 753 (11th Cir. 1993), where the Court of Appeals held that Sunkist was equitably estopped from contesting Del Monte's standing to compel arbitration of disputes arising out of a contract to which Del Monte was not a party. As in the instant case, Sunkist had asserted numerous claims against Del Monte which arose out of and were inextricably tied to an underlying contract containing an arbitration provision. Stating that "the focus of our inquiry should be on the nature of the underlying claims asserted by Sunkist against Del Monte," the Court held that because Sunkist both relied upon and sought to hold Del Monte liable for the obligations contained in the underlying contract, Sunkist was "equitably estopped from avoiding arbitration of its claims." 10 F.3d at 757, 758. *See also MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir. 1999); *A.L. Williams & Associates, Inc. v. McMahon,* 697 F.Supp. 488, 494 (N.D. Ga. 1988) ("[I]t would be manifestly unfair to allow [a party] to assert claims arising out of the agreements against non-signatories to those agreements without allowing those people also to invoke the arbitration clauses contained in the agreements").

The Court of Appeals for the Fifth Circuit has joined other circuit courts in holding that a non-signatory to a contract containing an arbitration clause may compel arbitration "under an equitable estoppel theory, including when the action is intertwined with, and dependent upon, that contract." *Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524, 527 (5th Cir. 2000). In *Grigson,* the Court adopted the "intertwined-claims test" enunciated by the Eleventh Circuit in *MS Dealer Serv. Corp., supra,* which holds that equitable estoppel will be applied to allow a non-signatory to a contract containing an arbitration clause to compel arbitration where (a) the signatory to the contract must rely upon the terms of that agreement in asserting its claims against the non-signatory, or (b) the signatory to that contract asserts allegations "of substantially

interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* As explained by the Court in *Grigson,* the "linchpin for equitable estoppel is equity – fairness." *Id.*

The same result was reached in *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile S.A., supra*), in which the plaintiff was required to arbitrate claims against defendant Rhone Poulenc, this despite the fact that no privity of contract existed between such parties. In that case, the plaintiff had brought suit for breach of various distribution agreements against certain affiliates of Rhone Poulenc, and also sued Rhone Poulenc for wrongful interference with and wrongful termination of plaintiffs' contracts with the affiliates. Each of the underlying distribution agreements contained an arbitration provision which provided that all disputes arising out of or in connection with such contracts were to be submitted to arbitration before the International Chamber of Commerce in accordance with its Rules of Conciliation and Arbitration.

Although Rhone Poulenc was not a party to the underlying distribution contracts giving rise to the plaintiff's claims, Rhone Poulenc agreed to submit to arbitration with respect to all of the claims asserted against it. Plaintiff resisted arbitration contending that it had no contractual relationship with Rhone Poulenc. The Court of Appeals rejected this argument, holding that because plaintiff's claims against Rhone Poulenc were inextricably tied to and inseparable from the underlying contracts and the claims against its affiliates, plaintiff could not avoid its agreement to arbitrate such claims and that to permit plaintiff to do so would effectively thwart the federal policy in favor of arbitration. 863 F.2d at 320-321. *See also Sam Reisfield & Sons Import Co. v. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976).

Each of the foregoing cases stands for the fundamental principle that litigants will not be permitted to "have it both ways" by relying upon a contract when it works to their advantage,

and repudiating that contract when it works to their disadvantage. See *Tepper Realty Company v. Mosaic Tile Company, supra,* 259 F.Supp. at 692. As held by the Court in *Tepper Realty,* "[t]o permit them to do so would not only flout equity, it would do violence. . .to the Congressional purpose underlying the Federal Arbitration Act." Clearly, Aceros cannot be permitted to "have it both ways" by seeking to hold Steel liable for the obligations contained in the Contract of Sale, to which it is not a party, while simultaneously seeking to deny Steel the right to arbitrate such claims as required by that agreement. *Id.*

## POINT III

## THIS ACTION SHOULD BE DISMISSED
## IN FAVOR OF ARBITRATION

As previously detailed, each of the claims set forth in the First Amended Original Petition is subject to arbitration before the ICC in Geneva, Switzerland. Because the entire controversy is subject to arbitration, granting a stay of this action would serve no purpose. *Black & Veatch International Copany v. Wartsila NSD North America, Inc., supra,* 1998 WL 953966 at * 4. *See also Rhone Poulenc Textile S.A., supra, 863 F.2d at 322* and *Simula, Inc., supra,* 175 F.3d at 726 (motions to compel arbitration granted and cases dismissed). Accordingly, upon granting defendants' motion to compel arbitration, this case should be dismissed.

## CONCLUSION

For each of the foregoing reasons, defendants respectfully request that their motion to compel arbitration be granted, and that if Aceros elects to pursue its claims in this action, it must do so before the ICC in Geneva, Switzerland, in accordance with the ICC Rules, as required by the Agreement to Arbitrate. Accordingly, and upon the granting of the motion to compel arbitration, defendants further request that this matter be dismissed.

Dated: February 23, 2004

RODRIGUEZ, COLVIN, CHANEY & SAENZ, L.L.P.

By: _Norton A Colvin_

Norton A. Colvin, Jr. *by permission McFortous*
Attorney-in-Charge
State Bar No. 04632100          *SBDT 0463140*
Southern Admissions No. 1941    *SDA 3983*
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(956) 542-7441
Fax (956) 541-2170

and

Robert P. Stein
GREENBERG TRAURIG, LLP
885 Third Avenue
New York, New York 10022-4834
(212) 801-2100
Fax (212) 688-2449

Attorneys for Defendants

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served upon

all counsel of record, to-wit:

David C. Garza
Garza & Garza, LLP
680 East St. Charles, Suite 300
Post Office Box 2025
Brownsville, Texas 78522-2025
Attorneys for Plaintiff

by certified mail, return receipt requested, facsimile transmission, and/or hand delivery, pursuant

to the Federal Rules of Civil Procedure, on this the 26th day of February, 2004.

_Norton A Colvin_
Norton A. Colvin, Jr. *mes*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

ACEROS Y LAMINADOS SIGOSA ,　　　　:
S.A. DE C.V.,　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　Plaintiff,　:　　　**Civil Action No. B-04-031**
　　　　　　　　　　　　　　　　　　:
DUFERCO S.A. and DUFERCO STEEL,　:
INC.,　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Defendants.　:
　　　　　　　　　　　　　　　　　　:

## AFFIDAVIT OF NORTON A. COLVIN, JR.

STATE OF TEXAS　　　　　§
　　　　　　　　　　　　　§
COUNTY OF CAMERON　　　§

I, Norton A. Colvin, Jr., being duly sworn, depose and say:

1.　　I am over 18 years of age, have never been convicted of a crime, and am competent to make this affidavit. The factual statements in this affidavit are based on my personal knowledge and are true and correct.

2.　　I am an attorney licensed to practice in the State of Texas and work with the law firm of Rodriguez, Colvin, Chaney & Saenz, L.L.P. in Brownsville, Texas. As a part of my work on this case, I have reviewed the case file and the documents which this law firm has received as a part of this case.

3.　　Attached hereto as Exhibit "A" to my affidavit is a true and correct copy of Plaintiffs' First Amended Original Petition filed in this cause.

4.　　Attached hereto as Exhibit "B" to my affidavit is a true and correct copy of Notice of Removal filed in this cause.

5.    Attached hereto as Exhibit "C" to my affidavit is a true and correct copy of the prior contracts.

6.    Attached hereto as Exhibit "D" to my affidavit is a true and correct copy of the ICC Rules.

Further, The Affiant Saith Naught.

_____
Norton A. Colvin, Jr., Affiant

BEFORE ME, the undersigned authority, on this day personally appeared Norton A. Colvin, Jr., who identified himself to me and who, after being duly sworn, stated to me that the statements herein are true and correct.

SUBSCRIBED AND SWORN TO BEFORE ME this the 20th day of February, 2004.

_____
Notary Public in and for
The State of Texas



IN THE 357th JUDICIAL DISTRICT COURT

CAMERON COUNTY, TEXAS

CAUSE NUMBER:  2003-09-4528-E

---

| | |
|---|---|
| ACEROS Y LAMINADOS SIGOSA,<br>S.A. DE C.V. §<br>§<br>Plaintiff §<br>§<br>vs. §<br>§<br>DUFERCO S. A. AND DUFERCO §<br>STEEL, INC. §<br>§<br>Defendants § | FILED __3:00__ O'CLOCK __P__ M<br>AURORA DE LA GARZA DIST. CLERK<br><br>JAN 2 0 2004<br><br>DISTRICT COURT OF CAMERON COUNTY, TEXAS<br>_____ DEPUTY |

## PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Aceros y Laminados Sigosa S.A. de C.V., Plaintiff, and would respectfully show the Court as follows:

1. <u>Discovery Control Plan</u>.   Plaintiff intends to conduct discovery under Level 3 as provided for in Rule 190.4 <u>Texas Rules of Civil Procedure</u>.

2. <u>Parties</u>.    (a)    Plaintiff is Aceros Y Laminados Sigosa, S.A. de C.V., a corporation duly incorporated under the laws of Mexico.

(b)    Defendant Duferco S.A. is a foreign corporation, which upon information and belief is not authorized to do business in this state and is organized under the laws of the country of Switzerland. Duferco S.A. can be served by serving the Secretary of State of Texas under the Texas Long Arm statute, Section 17.041, et. seq. of the Texas Civil Practice & Remedies Code, at 1019 Brazos Street, Austin, Texas 78701. Defendant Duferco S.A. may be cited by serving the Secretary of State of Texas, provided that the citation and petition are forwarded by registered mail, return receipt requested, to Defendant Duferco S.A. at its principal home office and addressed as follows:

PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION                                                PAGE 1
n:\legal\Sigosa-Duferco\Plaintiff-First-Amended-Original-Petition



Duferco S.A.
Via Bagutti 9
CH. 6900 Lugano
Switzerland

(c)    Duferco Steel, Inc. is a foreign corporation authorized to do business in this state. Duferco Steel, Inc. can be served by delivering process to its registered agent in this state, CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

3.  Jurisdiction and Venue.    This Court has jurisdiction over Duferco Steel, Inc. because it is authorized to do business in this State.    The Court has jurisdiction over Duferco S.A. because it is engaged in a common enterprise with Duferco Steel, Inc., which involves transactions happening in this state involving commerce.  The Defendant Duferco S.A. is also engaged in business in Texas more particularly described below.  Defendant Duferco S.A. does not maintain a regular place of business in Texas and has no designated agent on whom service of citation may be made in this action.  The cause(s) of action asserted arose from or are connected with purposeful acts committed by the Defendant Duferco S.A. in Texas.  Among other actions, the Defendant Duferco S.A. shipped the steel billets, further identified herein, to Brownsville, Texas, and the discovery of the defective product as further set out herein and the claim duly supported by International Survey Certificate was presented to the buyer after the shipment's arrival at its port of designation in Brownsville, Texas.

The Court also has jurisdiction over the subject matter of this suit because the contract at issue in this suit was performable, in part, in this state.    The amount in controversy exceeds the minimum jurisdictional limits of the Court.

Venue is appropriate because the contract in question was performed, in part in this county.  This is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred.  Therefore, venue is proper in Cameron County.

4.  Contract; Delivery.    Attached as Exhibit "A" is an order confirmation (the "contract") in which Plaintiff was the buyer and the Defendant Duferco S.A. was the seller.    The contract was for the sale of prime hot rolled steel billets to be delivered to the Port of Brownsville, located within Cameron County, Texas.    The prime hot rolled steel billets were, in fact, delivered at the Port of Brownsville, within this state and county, and Plaintiff took possession of the steel in Brownsville, Cameron County, Texas.

5.  Defect in Material.    The steel billets were defective and unusable for the purposes for which it was intended.    Plaintiff had the material inspected, tested and surveyed.  The survey was an international survey certificate as provided for in Exhibit "A."  The claims by the Plaintiff are supported by this international survey certificate. The international survey certificate was delivered to Defendant Duferco S.A.  Plaintiff has provided notice to the Defendants.  In addition, the Plaintiff sent a sample of the steel billet to the Defendant Duferco S.A.'s headquarters in Switzerland.

6.  Breach of Warranty.  Plaintiff would show the Court that Defendants warranted that the steel in question would be fit for the ordinary purposes for which steel billets are used, and would be free from defects.    Defendants have breached the warranty and Plaintiff has suffered damages as a result.

7.  Damages.  As a result of the breach of warranty, Plaintiff has suffered considerable damages of defective finished products transformed in its mills. These finished products were rejected and returned by Plaintiff's customers, causing considerable economic damages and loss of market share to Plaintiff's products. Plaintiff's damages exceed the minimum jurisdictional level of this court.

8.  Arbitration Clause.  As is shown by Exhibit "A", the contract contains a clause (Clause 15), which purports to require Arbitration between the parties.   Plaintiff would show the Court that the arbitration clause is not effective against Plaintiff. The clause is ambiguous because it says "the controversy will be resolved through arbitration to be conducted in accordance with the conciliation and arbitration rules of the International Chamber of Commerce."   Without limitation, this clause is ambiguous because it says the arbitration will use the rules of the International Chamber of Commerce, but does not say the International Chamber of Commerce will conduct the arbitration.    Because the contract was prepared by Defendants and is on Defendants' form, any ambiguity should be resolved in Plaintiff's favor.

9.  Conditions Precedent.  Plaintiff would show that all conditions precedent to its recovery under the contract have been performed or have occurred.

10. Attorney's Fees.    Plaintiff sues for reasonable attorney's fees pursuant to Section 38.001, Texas Civil Practice and Remedies Code.

11. Joint Enterprise or Common Enterprise or Venture.  Plaintiff would show the Court that the Defendants are controlled by a common board of directors and common ownership, and that they engaged in the transaction made the subject of this suit as a common enterprise or venture, in which each participated and/or engaged in a single business enterprise.      Accordingly, Defendants are jointly and severally liable to Plaintiff.

12. Prayer.  WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that:

　　a.  Defendants be cited to appear and answer;

　　b.  Upon trial of this case, Plaintiff be awarded judgment against the Defendants for its damages suffered herein;

　　c.  Plaintiff recover its reasonable attorney's fees;

　　d.  Plaintiff recover interest in the amounts permitted by law;

e.   Plaintiff recover its costs of court;

f.   Plaintiff recover general relief.

                              Respectfully submitted,
                              ACEROS Y LAMINADOS SIGOSA S.A. de C.V.


            By:    _____

                   DAVID C. GARZA
                   State Bar ID #07731400
                   GARZA & GARZA, LLP
                   680 East St. Charles, Suite 300
                   P.O. Box 2025
                   Brownsville, Texas 78522-2025
                   Telephone:  (956) 541-4914
                   Fax:  (956) 542-7403
                   **ATTORNEY FOR PLAINTIFF**

## Duferco



Messrs.
SIGOSA, S.A. DE C.V.
PROLONGACION AV. UNIONES NC. 100
FRACC. INDUSTRIAL DEL NORTE
H. MATAMOROS, TAM. 87340
MEXICO

SO-1301001001    MARCH 20, 2002

## ORDER CONFIRMATION

**1.MATERIAL:** PRIME HOT ROLLED STEEL BILLETS ACCORDING TO GOST STANDARD

**2.QUALITY:** SGPS ACCORDING TO GOST 380-94 ≈ *Chemical composition :*
*C = 0.22 - 0.30 , Mn = 0.80 - 1.20 , S = 0.15 MAX.*

**3.SIZE/LENGTH:**
1,000 MT    150 X 150 MM (+/-3MM) X 10,000 MM (+/-100MM)  *(-0 MM)*
1,000 MT    150 X 150 MM (+/-3MM) X 10,400 MM (+/-100MM)  *(-0 MM)*
2,500 MT    150 X 150 MM (+/-3MM) X 11,200 MM (+/-100MM)  *(-0 MM)*
2,500 MT    150 X 150 MM (+/-3MM) X 11,500 MM (+/-100MM)  *(-0 MM)*
3,000 MT    150 X 150 MM (+/-3MM) X 11,800 MM (+/-100MM)  *(-0 MM)*
10,000MT
5,000 MT    100 X 100 MM (+/-3MM) X 6,000 MM (+/-100MM)  *(-0 MM)*

**4.TOTAL QUANTITY:** 15,000 MT (+/- 10PCT)

**5.ORIGIN:** RUSSIA

**6.SHIPMENT:** MAY / BEGINNING OF JUNE 2002
FROM ANY BLACK SEA OR BALTIC SEA PORT

**7.DESTINATION:** BROWNSVILLE / TAMPICO / ALTAMIRA
TEXAS, U.S.A.

**8.MARKING:** HEAT NO. / SIZE PAINTED ON THE END OF EACH BILLET

**9.PACKING:** IN BUNDLES OF MAX. 3.5MT – FOR MATERIAL IN SIZE 150X150
IN BUNDLES OF MAX 7MT - FOR MATERIAL IN SIZE 100X100

**10.PRICE:** 189USD/MT CFR BROWNSVILLE FULL LINER TERMS FIRST PLACE REST
WHARFAGE PAID

**11.INVOICING:** ACTUAL WEIGHT SHIPPED

**12.PAYMENT** BY IRREVOCABLE AND CONFIRMED LETTER OF CREDIT PAYABLE 45 DAYS
TO BE OPENED WITHIN APRIL 8, 2002 FROM ANY FIRST CLASS MEXICAN
BANK AND TO BE ADVISED ON BNP PARIBAS GENEVA, SWITZERLAND IN
FAVOUR OF:



EXHIBIT

**Duferco**

DUFERCO S.A.
VIA BAGUTTI
6901 LUGANO
SWITZERLAND

DOCUMENTS TO BE PRESENTED:
- COMMERCIAL INVOICE INCLUDING NUMBER OF BUNDLES
- FULL SET OF BILL OF LADING TO THE ORDER OF THE L/C OPENING BANK NOTIFY TO SIGOSA
- PACKING LIST
- CERTIFICATE OF ORIGIN

- LATEST SHIPMENT DATE JUNE 12, 2002
  VALIDITY JULY 3, 2002
- DISCHARGING PORTS ALLOWED:
  BROWNSVILLE TX USA, FOR FINAL DESTINATION MEXICO
- STALE DOCUMENTS ACCEPTABLE
- CHARTER PARTY B/L ACCEPTABLE
- PARTIAL SHIPMENT ALLOWED
- THIRD PARTY DOCUMENTS ACCEPTABLE
- BILL OF LADING CLAUSED "ATMOSPHERIC RUST STOCKED AT OPEN AREA UNPROTECTED OR SIMILAR WORDS ACCEPTABLE
- L/C TO INDICATE "SPELLING OR TYPING ERRORS NOT AFFECTING FIGURES ARE NOT CONSIDERED DISCREPANCIES"
- MILL'S TEST QUALITY CERTIFICATES SHOWING CHEMICAL COMPOSITION OF EACH HEAT TO BE PROVIDED OUTSIDE L/C TO BE SENT TO CUSTOMER VIA AIR COURIER WITHIN 14 DAYS AFTER BILL OF LADING DATE.
- CONFIRMATION COST TO BE FOR SELLER'S ACCOUNT
- T/T REIMBURSEMENT ALLOWED

13. CLAIMS:

CLAIMS, DULY SUPPORTED BY INTERNATIONAL SURVEY CERTIFICATES MUST BE PRESENTED FROM BUYER TO SELLER WITHIN 35 DAYS FROM VESSEL'S ARRIVAL AT PORT OF DESTINATION.

A) QUANTITY CLAIM: A FRANCHISE OF +/-0.3%. IS ALLOWED. IN CASE OF OVERAGE/SHORTAGE, SELLER/BUYER TO BE COMPENSATED ONLY FOR THE WEIGHT EXCEEDING THE +/-0.3% FRANCHISE. SURVEY REPORT TO BE PRESENTED TO THE SELLER NOTWITHSTANDING SHORTAGE/OVERSHIPMENT WITHIN 0.3% FRANCHISE.

B) QUALITY CLAIM: CLAIMED MATERIAL MUST BE HELD AT SUPPLIERS DISPOSAL AND ACCESSIBLE FOR INSPECTION.

Exhibit A

**Duferco**

**14. PROPER LAW:** THE FORMATION, VALIDITY, CONSTRUCTION AND PERFORMANCE OF THIS CONTRACT ARE GOVERNED BY THE LAWS OF SWITZERLAND.

**15. ARBITRATION:**

THE PARTIES WILL ENDEAVOUR TO THE FULLEST EXTENT TO SETTLE ANY CONTROVERSY ARISING OUT OF THE PRESENT CONTRACT IN AN AMICABLE WAY. IN CASE IT IS NOT POSSIBLE TO FIND AN AMICABLE SETTLEMENT, THEN THE CONTROVERSY WILL BE RESOLVED THROUGH ARBITRATION TO BE CONDUCTED
IN ACCORDANCE WITH CONCILIATION AND ARBITRATION RULES OF THE INTERNATIONAL CHAMBER OF COMMERCE.
PLACE OF ARBITRATION: GENEVE.
THE AWARD OF THE ARBITRATORS SHALL BE FINAL AND BINDING ON THE PARTIES.

**16. FORCE MAJEURE:**

THE SELLER AND THE BUYER CANNOT BE HELD RESPONSIBLE FOR ANY DELAY OR FAILURE TO COMPLY WITH THIS CONTRACT AS A RESULT OF STRIKES, FIRES, FLOODS, ACCIDENTS TO TRANSPORTATION OR INSTALLATIONS, EXPLOSIONS, REVOLUTIONS, CIVIL OR MILITARY COMMOTION'S OR ANY OTHER ACCIDENTS OF SIMILAR NATURE. IN CASE OF SUCH CONTINGENCIES, THE PARTY INCAPABLE OF COMPLYING EITHER PARTIALLY OR TOTALLY, WITH THE DISPOSITIONS OF THIS CONTRACT, SHALL NOTIFY, IN WRITING TO THE OTHER PARTY, WITHIN 48 HOURS (NOT COUNTING SATURDAYS, SUNDAYS, OR HOLIDAYS), OR ITS OCCURRENCE AND CONFIRM IT WITHIN NEXT 7 DAYS THROUGH A CERTIFICATE ISSUED BY A GOVERNMENT AGENCY OR BY THE LOCAL CHAMBER OF COMMERCE. IN THIS CASE THE TIME OF FULFILMENT OF THE CONTRACT OBLIGATIONS IS EXTENDED FOR THE PERIOD EQUAL TO THAT DURING WHICH SUCH CIRCUMSTANCES LAST.
IN CASE ABOVE CONTINGENCIES LAST OVER 2 MONTHS, THEN THE SELLER AND/OR THE BUYER HAVE THE RIGHT TO TERMINATE THE CONTRACT. THIS CLAUSE SHALL NOT APPLY TO ANY PAYMENT OBLIGATION OF EITHER OF THE PARTIES.

**17. MISCELLANEOUS** ANY CHANGES TO THE PRESENT CONTRACT WILL BE BINDING FOR BOTH PARTIES ON CONDITION THEY WERE ACCEPTED IN WRITTEN FORM BY BOTH SIDES. NEITHER PARTY HAS THE RIGHT WITHOUT THE CONSENT OF THE OTHER PARTY TO PASS THE PRESENT CONTRACT TO A THIRD PARTY. THIS CONTRACT HAS BEEN DRAWN IN ENGLISH LANGUAGE IN TWO ORIGINALS.
IN ALL CORRESPONDENCE BOTH PARTIES SHOULD REFER TO THIS CONTRACT NUMBER.

SIGOSA S.A. DE C.V.
(THE BUYER)

FOR ACCEPTANCE

DUFERCO S.A.
(THE SELLER)

United States District Court
Southern District of Texas
FILED

FEB 2 0 2004

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ACEROS Y LAMINADOS SIGOSA ,  :
S.A. DE C.V.,                :
                             :
                 Plaintiff,  :    Civil Action No. **B-04-031**
                             :
DUFERCO S.A. and DUFERCO STEEL, INC.,  :
                             :
                 Defendants. :
————————————————————————:

## NOTICE OF REMOVAL

To:   The United States District Court for the
      Southern District of Texas – Brownsville Division:

        Pursuant to 9 U.S.C. §§ 202, 203 and 205 of the Convention on the Recognition and
Enforcement of Foreign Arbitral Awards (the "Convention"), defendants Duferco S.A. and
Duferco Steel, Inc. hereby file this Notice of Removal of the above-captioned case from the 357th
Judicial District Court, Cameron County, Texas, in which it is now pending, to the United States
District Court for the Southern District of Texas – Brownsville Division, and in support of such
removal, state as follows:

        1.      On or about September 8, 2003, Plaintiff Aceros Y Laminados Sigosa S.A. de C.V.
("Aceros") filed an Original Petition in the 357th Judicial District Court, Cameron County, Texas
(the "State Court Action"). This action was docketed as Cause No. 2003-09-4528-E. Service of
the Original Petition was not made upon either of the Defendants. (Exhibit A-1)[1]

        2.      On or about January 20, 2004, Aceros filed a First Amended Original Petition in
the State Court Action. (Exhibit A-2)

---

[1] All documents required by Local Rule 3K are attached with an index as Exhibit A.

EXHIBIT

B

3.      On or about February 2, 2004, service of the First Amended Original Petition was made upon CT Corporation, as statutory agent for Defendant Duferco Steel, Inc.

4.      On or about January 30, 2004, a copy of the First Amended Original Petition was served upon the Secretary of State of the State of Texas and, on February 4, 2004, was forwarded by Registered Mail to Duferco S.A. in Lugano, Switzerland.

5.      In Paragraph 4 of its First Amended Original Petition, Aceros alleges that its claims arise out of a contract between Aceros and Duferco S.A. (the "Contract"), a copy of which is annexed thereto as Exhibit A.

6.      Pursuant to Section 15 of the Contract, entitled "ARBITRATION," Aceros and Duferco S.A. agreed as follows:

> THE PARTIES WILL ENDEAVOUR TO THE FULLEST EXTENT TO SETTLE ANY CONTROVERSY ARISING OUT OF THE PRESENT CONTRACT IN AN AMICABLE WAY. IN CASE IT IS NOT POSSIBLE TO FIND AN AMICABLE SETTLEMENT, THEN THE CONTROVERSY WILL BE RESOLVED THROUGH ARBITRATION TO BE CONDUCTED IN ACCORDANCE WITH CONCILIATION AND ARBITRATION RULES OF THE INTERNATIONAL CHAMBER OF COMMERCE. PLACE OF ARBITRATION: GENEVE. THE AWARD OF THE ARBITRATORS SHALL BE FINAL AND BINDING ON THE PARTIES   (the "Agreement to Arbitrate").

7.      At the time of the commencement of this action, Aceros was a corporation organized and existing under the laws of Mexico.

8.      At the time of the commencement of this action, Defendant Duferco S.A. was and is a corporation organized under the laws of Switzerland, with its principal place of business in Lugano, Switzerland.

9.      The Agreement to Arbitrate is an agreement which falls under the Convention in that it arises out of a commercial legal relationship that is not one entirely between citizens of the United States.

10.     Pursuant to § 203 of the Convention, the district courts have original jurisdiction over this action.

11.     Pursuant to §§ 204 and 205 of the Convention, venue is properly within this District in that the State Court Action is pending within this District.

12.     The State Court Action is one which defendants may remove in its entirety to this Court pursuant to 9 U.S.C. § 205.

13.     Written notice of the filing of this Notice of Removal will be given to Plaintiff as required under 28 U.S.C. §1446(d).

14.     A copy of this Notice of Removal will be filed with the Clerk of the 357th Judicial District Court, Cameron County, Texas as required by 28 U.S.C. § 1446(d).  A copy of the Notice of Filing of Notice of Removal is attached to this Notice of Removal as Exhibit B.

Dated: February 20, 2004

Respectfully submitted,

RODRIGUEZ, COLVIN, CHANEY & SAENZ, L.L.P.

By:  _Norton A Colvin_ .
     Norton A. Colvin, Jr.  w/ permission
     Attorney-in-Charge          NCBastau
     State Bar No. 04632100      SBOT 04631400
     Southern Admissions No. 1941
     1201 East Van Buren
     Post Office Box 2155
     Brownsville, Texas 78522
     (956) 542-7441
     Fax (956) 541-2170

     and

     Robert P. Stein
     GREENBERG TRAURIG, LLP
     885 Third Avenue
     New York, New York 10022-4834
     (212) 801-2100
     Fax (212) 688-2449

     Attorneys for Defendants

3

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing Notice of Removal has been served on February 20, 2004 by certified mail upon counsel of record as follows:

> David C. Garza
> Garza & Garza LLP
> 680 East St. Charles Ste. 300
> Brownsville, Texas 78522

Norton A. Colvin, Jr.

S-force

Messrs.
SIDOSA, S.A. DE C.V.
PROLONGACION AV. UNIONES NO. 119
FRACC. INDUSTRIAL DEL NORTE
H. MATAMOROS, TAM. 87349
MEXICO

## REVISED ORDER CONFIRMATION    (37990)    SEPTEMBER 14th, 2001

| | |
|---|---|
| 1.MATERIAL: | PRIME HOT ROLLED STEEL BILLETS ACCORDING TO GOST STANDARD |
| 2.QUALITY: | 5СПS ACCORDING TO GOST 380-94 |
| 3.SIZE/LENGTH: | 10,000MT: 100 X 100 MM (+/-3MM) X 6000 MM (+/-100MM) |
| | 1,100MT: 150 X 150 MM (+/-3MM) X 11500 MM (+/-100MM) |
| | 1,800MT: 150 X 150 MM (+/-3MM) X 11700 MM (+/-100MM) |
| | 100MT: 150 X 150 MM (+/-3MM) X 11500 MM (+/-100MM) |
| | 100MT: 150 X 150 MM (+/-3MM) X 11300 MM (+/-100MM) |
| | 100MT: 150 X 150 MM (+/-3MM) X 11550 MM (+/-100MM) |
| 4.QUANTITY: | 18,000 MT (+/- 10pct) |
| 5.ORIGIN: | RUSSIA |
| 6.SHIPMENT: | OCTOBER/NOVEMBER, LATEST 15th NOVEMBER 2001 |
| | FROM ANY BLACK SEA OR BALTIC SEA PORT |
| 7.DESTINATION: | BROWNSVILLE |
| 8.MARKING: | HEAT NO. / SIZE PAINTED ON THE END OF EACH BILLET |
| 9.PACKING: | IN BUNDLES OF MAX. 6.5MT – FOR  150 x 150 MM . |
| | IN BUNDLES OF MAX 4.0 MT – FOR  100 x 100 MM. |
| 10.PRICE: | 182.50/MT CFR BROWNSVILLE FULL LINER TERMS FIRST PLACE REST, WHARFAGE PAID |
| 11.INVOICING: | ACTUAL WEIGHT SHIPPED |
| 12.PAYMENT | BY IRREVOCABLE AND CONFIRMED LETTER OF CREDIT PAYABLE AT SIGHT TO BE OPENED WITHIN SEPTEMBER 30th, 2001 FROM ANY FIRST CLASS MEXICAN BANK AND TO BE ADVISED ON CREDIT SUISSE, GENEVA, SWITZERLAND IN FAVOUR OF: |

DUFERCO S.A.

*Handwritten note:*
ORDER CONFIRMATION
# 37990 of Sep-7-0
– length to be agreed
later on – is what is
now Described on
№ 3 = 37990 –Sep.1

EXHIBIT

C

## Defense

- COMMERCIAL INVOICE INCLUDING NUMBER OF 3L ROLES
- FULL SET OF BILL OF LADING TO THE ORDER OF THE L/C OPENING BANK NOTIFY TO
  SIGOSA
- PACKING LIST
- CERTIFICATE OF ORIGIN

- LATEST SHIPMENT DATE NOVEMBER 15TH, 2001
- VALIDITY DECEMBER 00TH, 2001
- DISCHARGING PORTS ALLOWED;
  - BROWNSVILLE, TX USA, FOR FINAL DESTINATION MEXICO
- STALE DOCUMENTS ACCEPTABLE
- CHARTER PARTY B/L ACCEPTABLE
- PARTIAL SHIPMENT ALLOWED
- THIRD PARTY DOCUMENTS ACCEPTABLE
- BILL OF LADING CLAUSED "ATMOSPHERIC RUSTY, STOCKED AT OPEN AREA, UNPROTECTED" OR SIMILAR WORDS ACCEPTABLE
- L/C TO INDICATE "SPELLING OR TYPING ERRORS NOT AFFECTING FIGURES ARE NOT CONSIDERED DISCREPANCIES"
- MILL'S TEST QUALITY CERTIFICATES SHOWING CHEMICAL COMPOSITION OF EACH HEAT TO BE PROVIDED OUTSIDE L/C TO BE SENT TO CUSTOMER VIA AIR COURIER WITHIN 14 DAYS AFTER B/L OF LADING DATE
  - CONFIRMATION COST TO BE FOR SELLER'S ACCOUNT
  - T/T REIMBURSEMENT ALLOWED

**12. CLAIMS:** CLAIMS, ONLY SUPPORTED BY INTERNATIONAL SURVEY CERTIFICATES MUST BE PRESENTED FROM BUYER TO SELLER WITHIN 05 DAYS FROM VESSEL'S ARRIVAL AT PORT OF DESTINATION.

A) QUANTITY CLAIM: A FRANCHISE OF +/-0.3% IS ALLOWED: IN CASE OF OVERAGE/SHORTAGE, SELLER/BUYER TO BE COMPENSATED ONLY FOR THE WEIGHT EXCEEDING THE +/-0.3% FRANCHISE.

B) QUALITY CLAIM: CLAIMED MATERIAL MUST BE HELD AT SUPPLIER'S DISPOSAL AND ACCESSIBLE FOR INSPECTION.

**13. PROPER LAW:** THE FORMATION, VALIDITY, CONSTRUCTION AND PERFORMANCE OF THIS CONTRACT ARE GOVERNED BY THE LAWS OF SWITZERLAND.

**13. ARBITRATION:** THE PARTIES WILL ENDEAVOUR TO THE FULLEST EXTENT TO SETTLE ANY CONTROVERSY ARISING OUT OF THE PRESENT CONTRACT IN AN AMICABLE WAY. IN CASE IT IS NOT POSSIBLE TO FIND AN AMICABLE SETTLEMENT, THEN THE CONTROVERSY WILL BE RESOLVED THROUGH ARBITRATION TO BE CONDUCTED IN ACCORDANCE WITH CONCILIATION AND ARBITRATION RULES OF THE INTERNATIONAL CHAMBER OF COMMERCE.
PLACE OF ARBITRATION: GENEVE
THE AWARD OF THE ARBITRATORS SHALL BE FINAL AND BINDING ON THE PARTIES.

**Defense**

16.FORCE
MAJEURE:

THE SELLER AND THE BUYER CANNOT BE HELD RESPONSIBLE FOR ANY DELAY OR
FAILURE TO COMPLY WITH THIS CONTRACT AS A RESULT OF STRIKES, FIRES,
FLOODS, ACCIDENTS TO TRANSPORTATION OR INSTALLATIONS, EXPLOSIONS,
REVOLUTIONS, CIVIL OR MILITARY COMMOTIONS OR ANY OTHER ACCIDENTS OF
SIMILAR NATURE. IN CASE OF SUCH CONTINGENCIES, THE PARTY INCAPABLE OF
COMPLYING, EITHER PARTIALLY OR TOTALLY, WITH THE DISPOSITIONS OF THIS
CONTRACT, SHALL NOTIFY, IN WRITING TO THE OTHER PARTY WITHIN 48 HOURS
(NOT COUNTING SATURDAYS, SUNDAYS OR HOLIDAYS) OF ITS OCCURRENCE AND
CONFIRM IT WITHIN NEXT 7 DAYS THROUGH A CERTIFICATE ISSUED BY A
GOVERNMENT AGENCY OR BY THE LOCAL CHAMBER OF COMMERCE. IN THIS CASE
THE TIME OF FULFILMENT OF THE CONTRACT OBLIGATIONS IS EXTENDED FOR
THE PERIOD EQUAL TO THAT DURING WHICH SUCH CIRCUMSTANCES LAST
IN CASE ABOVE CONTINGENCIES LAST OVER 2 MONTHS, THEN THE SELLER
AND/OR THE BUYER HAVE THE RIGHT TO TERMINATE THE CONTRACT.
THIS CLAUSE SHALL NOT APPLY TO ANY PAYMENT OBLIGATION OF
EITHER OF THE PARTIES.

17.MISCELLANEOUS ANY CHANGES TO THE PRESENT CONTRACT WILL BE BINDING FOR BOTH PARTIES
ON CONDITION THEY WERE ACCEPTED IN WRITTEN FORM BY BOTH SIDES.
NEITHER PARTY HAS THE RIGHT WITHOUT THE CONSENT OF THE OTHER PARTY
TO PASS THE PRESENT CONTRACT TO A THIRD PARTY.
THIS CONTRACT HAS BEEN DRAWN IN ENGLISH LANGUAGE IN TWO ORIGINALS.
IN ALL CORRESPONDENCE BOTH PARTIES SHOULD REFER TO THIS CONTRACT
NUMBER.

SIGOSA SA. DE C.V.
(THE BUYER)

FOR ACCEPTANCE

SIGOSA, S. A. DE C. V.
SIG-980826-K79

AUTHORIZED BY
(THE SELLER)

**Duferco**

Messrs.
SIGORA, S.A. DE C.V.
PROLONGACION AV. UNIONES NO. 194
FRACC. INDUSTRIAL DEL NORTE
H. MATAMOROS, TAM. 87341
MEXICO

## ORDER CONFIRMATION    28066    OCTOBER 19TH, 2001

| | | |
|---|---|---|
| 1.MATERIAL: | PRIME HOT ROLLED STEEL BILLETS ACCORDING TO GOST STANDARD | |
| 2.QUALITY: | SGPS ACCORDING TO GOST 380-94 | |
| 3.SIZE/LENGTH: | 10,000MT 100 X 100 MM (+/-3MM) X 6000 MM (+/-100MM)    NO SHORTS | |
| | 1,000MT 150 X 150 MM (+/-3MM) X 3000 MM (+/-100MM)    NO SHORTS | |
| | 1,000MT 150 X 150 MM (+/-3MM) X 11150 MM (+/-100MM)    NO SHORTS | |
| | 1,000MT 150 X 150 MM (+/-3MM) X 11300 MM (+/-100MM)    NO SHORTS | |
| | 1,000MT 150 X 150 MM (+/-3MM) X 11500 MM (+/-100MM)    NO SHORTS | |
| 4.QUANTITY: | 15,000 MT (+/- 5% | |
| 5.ORIGIN: | RUSSIA | |
| 6.SHIPMENT: | DECEMBER 2001 | |
| | FROM ANY BLACK SEA OR BALTIC SEA PORT | |
| 7.DESTINATION: | BROWNSVILLE, TEXAS, U.S.A. | |
| 8.MARKING: | HEAT NO. / SIZE PAINTED ON THE END OF EACH BILLET | |
| 9.PACKING: | IN BUNDLES OF MAX. 0.5MT - FOR MATERIAL IN SIZE 150X150 | |
| | IN BUNDLES OF MAX. 2MT - FOR MATERIAL IN SIZE 100X100 | |
| 10.PRICE: | 175USD/MT CFR BROWNSVILLE FULL LINER TERMS FIRST PLACE REST, WHARFAGE | |
| | PAID, FIRST PLACE OF REST | |
| 11.INVOICING: | ACTUAL WEIGHT SHIPPED | |
| 12.PAYMENT | BY IRREVOCABLE AND CONFIRMED LETTER OF CREDIT PAYABLE AT SIGHT TO BE | |
| | OPENED WITHIN NOVEMBER 10TH, 2001 FROM ANY FIRST CLASS MEXICAN BANK | |
| | AND TO BE ADVISED ON CREDIT SUISSE, GENEVA, SWITZERLAND IN FAVOUR OF: | |

DUFERCO S.A.
VIA BAGUTTI 9
6901 LUGANO
SWITZERLAND

DOCUMENTS TO BE PRESENTED:

10/18/01 10:18
18/18 '01 GIO 18:15 FAX

**Outeres**

- COMMERCIAL INVOICE INCLUDING NUMBER OF BUNDLES
- FULL SET OF BILL OF LADING TO THE ORDER OF THE
  L/C OPENING BANK, NOTIFY TO
  SIGOSA
- PACKING LIST
- CERTIFICATE OF ORIGIN

- LATEST SHIPMENT DATE DECEMBER 31st, 2001
- VALIDITY JANUARY 25th, 2002
- DISCHARGING PORTS ALLOWED:
  - BROWNSVILLE, TX USA FOR FINAL
    DESTINATION MEXICO
- STALE DOCUMENTS ACCEPTABLE
- CHARTER PARTY B/L ACCEPTABLE
- PARTIAL SHIPMENT ALLOWED
- THIRD PARTY DOCUMENTS ACCEPTABLE
- BILL OF LADING CLAUSED "ATMOSPHERIC RUST,
  STOCKED AT OPEN AREA, UNPROTECTED" OR SIMILAR
  WORDS ACCEPTABLE
- L/C TO INDICATE "SPELLING OR TYPING ERRORS NOT
  AFFECTING FIGURES ARE NOT CONSIDERED
  DISCREPANCIES"
- MILLS TEST QUALITY CERTIFICATES SHOWING
  CHEMICAL COMPOSITION OF EACH HEAT TO BE
  PROVIDED OUTSIDE L/C TO BE SENT TO CUSTOMER
  VIA AIR COURIER WITHIN 14 DAYS AFTER BILL OF
  LADING DATE.
- CONFIRMATION COST TO BE FOR SELLER'S ACCOUNT
  T/T REIMBURSEMENT ALLOWED

**13. CLAIMS:** CLAIMS, ONLY SUPPORTED BY INTERNATIONAL SURVEY CERTIFICATES MUST BE
PRESENTED FROM BUYER TO SELLER WITHIN 15 DAYS FROM VESSEL'S ARRIVAL
AT PORT OF DESTINATION.

A) **QUANTITY CLAIM:** A FRANCHISE OF +/-0.3% IS ALLOWED; IN CASE OF
OVERAGE/SHORTAGE, SELLER/BUYER TO BE COMPENSATED ONLY FOR THE
WEIGHT EXCEEDING THE +/-0.3% FRANCHISE.

B) **QUALITY CLAIM:** CLAIMED MATERIAL MUST BE HELD AT SUPPLIER'S
DISPOSAL AND ACCESSIBLE FOR INSPECTION.

**14. PROPER LAW:** THE FORMATION, VALIDITY, CONSTRUCTION AND PERFORMANCE OF THIS
CONTRACT ARE GOVERNED BY THE LAWS OF SWITZERLAND.

**15. ARBITRATION:**

THE PARTIES WILL ENDEAVOUR TO THE FULLEST EXTENT TO SETTLE ANY
CONTROVERSY ARISING OUT OF THE PRESENT CONTRACT IN AN AMICABLE WAY.
IN CASE IT IS NOT POSSIBLE TO FIND AN AMICABLE SETTLEMENT, THEN THE
CONTROVERSY WILL BE RESOLVED THROUGH ARBITRATION TO BE CONDUCTED
IN ACCORDANCE WITH CONCILIATION AND ARBITRATION RULES OF THE
INTERNATIONAL CHAMBER OF COMMERCE.
PLACE OF ARBITRATION: GENEVE
THE AWARD OF THE ARBITRATORS SHALL BE FINAL AND BINDING ON THE
PARTIES.

02/26/2004   15:04   GREENBERG/TRAURIG → 5#011700#18565412170   NO.830   P08

**Deferco**

16. FORCE
MAJEURE

THE SELLER AND THE BUYER CANNOT BE HELD RESPONSIBLE FOR ANY DELAY OR FAILURE TO COMPLY WITH THIS CONTRACT AS A RESULT OF STRIKES, FIRES, FLOODS, ACCIDENTS TO TRANSPORTATION OR INSTALLATIONS, EXPLOSIONS, REVOLUTIONS, CIVIL OR MILITARY COMMOTIONS OR ANY OTHER ACCIDENTS OF SIMILAR NATURE. IN CASE OF SUCH CONTINGENCIES, THE PARTY INCAPABLE OF COMPLYING, EITHER PARTIALLY OR TOTALLY, WITH THE DISPOSITIONS OF THIS CONTRACT, SHALL NOTIFY, IN WRITING TO THE OTHER PARTY WITHIN 48 HOURS (NOT COUNTING SATURDAYS, SUNDAYS OR HOLIDAYS) OF ITS OCCURRENCE AND CONFIRM IT WITHIN NEXT 7 DAYS THROUGH A CERTIFICATE ISSUED BY A GOVERNMENT AGENCY OR BY THE LOCAL CHAMBER OF COMMERCE. IN THIS CASE THE TIME OF FULFILMENT OF THE CONTRACT OBLIGATIONS IS EXTENDED FOR THE PERIOD EQUAL TO THAT DURING WHICH SUCH CIRCUMSTANCES LAST.
IN CASE ABOVE CONTINGENCIES LAST OVER 2 MONTHS, THEN THE SELLER AND/OR THE BUYER HAVE THE RIGHT TO TERMINATE THE CONTRACT.
THIS CLAUSE SHALL NOT APPLY TO ANY PAYMENT OBLIGATION OF EITHER OF THE PARTIES.

17. MISCELLANEOUS ANY CHANGES TO THE PRESENT CONTRACT WILL BE BINDING FOR BOTH PARTIES ON CONDITION THEY WERE ACCEPTED IN WRITTEN FORM BY BOTH SIDES. NEITHER PARTY HAS THE RIGHT WITHOUT THE CONSENT OF THE OTHER PARTY TO PASS THE PRESENT CONTRACT TO A THIRD PARTY.
THIS CONTRACT HAS BEEN DRAWN IN ENGLISH LANGUAGE IN TWO ORIGINALS. IN ALL CORRESPONDENCE BOTH PARTIES SHOULD REFER TO THIS CONTRACT NUMBER.

SERENA S.A. DE C.V
(THE BUYER)

FOR ACCEPTANCE

PALMECO SA
(THE SELLER)



# International Court of Arbitration
## International Dispute Resolution Services

**International Chamber of Commerce**

Home ◂
Intro ◂
Search ◂
Map ◂
Français ◂

**Arbitration Services**

▼ Arbitration
▶ Appointing authority
▶ Pre-arbitral referee

**Other ICC Dispute Resolution Services**
▶ ADR
▶ Expertise
▶ DOCDEX

**Documentation**
▶ Rules
▶ Model or suggested clauses
▶ Awards
▶ Reference material
▶ ICC Court Bulletin
▶ Seminars & events
▶ Website Archives
▶ Contacts

Copyright © 2001
International Chamber
of Commerce
All rights reserved.

e-mail us your
comments and
remarks

INTRO | MODEL CLAUSE | RULES | REQUEST | PROCESS | COSTS | CONTACTS | COMMITTEE

## Rules of arbitration

The current Rules of Arbitration of the International Chamber of Commerce came into effect on 1 January 1998. They include the costs scales effective as of 1 July 2003.

<u>go directly to Rules in French</u>

You can download the full text of the Rules in any one of the following languages. Hoever, the English and French versions are the only official texts:

**Get your acrobat reader free**

Download PDF format

- ▪ Brazilian Portuguese
- ▪ Chinese
- ▪ Dutch
- ▪ English
- ▪ French
- ▪ German

- ▪ Italian
- ▪ Japanese
- ▪ Polish
- ▪ Spanish
- ▪ Turkish

**Foreword of Rules**

**Standard ICC Arbitration Clause**

**Rules of Arbitration of the International Chamber of Commerce**

*Introductory Provisions*

Article 1    International Court of Arbitration
Article 2    Definitions
Article 3    Written Notifications and Communications; Time Limits

**EXHIBIT**

**D**

*Commencing the Arbitration*

Article 4    Request for Arbitration
Article 5    Answer to the Request; Counterclaims
Article 6    Effect of the Arbitration Agreement


*The Arbitral Tribunal*

Article 7    General Provisions
Article 8    Number of Arbitrators
Article 9    Appointment and Confirmation of the Arbitrators
Article 10   Multiple Parties
Article 11   Challenge of Arbitrators
Article 12   Replacement of Arbitrators


*The Arbitral Proceedings*

Article 13   Transmission of the File to the Arbitral Tribunal
Article 14   Place of the Arbitration
Article 15   Rules Governing the Proceedings
Article 16   Language of the Arbitration
Article 17   Applicable Rules of Law
Article 18   Terms of Reference; Procedural Timetable
Article 19   New Claims
Article 20   Establishing the Facts of the Case
Article 21   Hearings
Article 22   Closing of the Proceedings
Article 23   Conservatory and Interim Measures


*Awards*

Article 24   Time Limit for the Award
Article 25   Making of the Award
Article 26   Award by Consent
Article 27   Scrutiny of the Award by the Court
Article 28   Notification, Deposit and Enforceability of the Award
Article 29   Correction and Interpretation of the Award


*Costs*

Article 30   Advance to Cover the Costs of the Arbitration
Article 31   Decision as to the Costs of the Arbitration


*Miscellaneous*

Article 32   Modified Time Limits
Article 33   Waiver
Article 34   Exclusion of Liability
Article 35   General Rule

**Appendix I**
**Statutes of the International Court of Arbitration of the ICC**

| | |
|---|---|
| Article 1 | Function |
| Article 2 | Composition of the Court |
| Article 3 | Appointment |
| Article 4 | Plenary Session of the Court |
| Article 5 | Committees |
| Article 6 | Confidentiality |
| Article 7 | Modification of the Rules of Arbitration |

**Appendix II**
**Internal Rules of the International Court of Arbitration of the ICC**

| | |
|---|---|
| Article 1 | Confidential Character of the Work of the International Court of Arbitration |
| Article 2 | Participation of Members of the International Court of Arbitration in ICC Arbitration |
| Article 3 | Relations between the Members of the Court and the ICC National Committees |
| Article 4 | Committee of the Court |
| Article 5 | Court Secretariat |
| Article 6 | Scrutiny of Arbitral Awards |

**Appendix III**
**Arbitration Costs and Fees**

| | |
|---|---|
| Article 1 | Advance on Costs |
| Article 2 | Costs and Fees |
| Article 3 | ICC as Appointing Authority |
| Article 4 | Scales of Administrative Expenses and of Arbitrator's Fees |

# FOREWORD

The closing decades of the twentieth century saw international commercial arbitration gain worldwide acceptance as the normal means of resolving international commercial disputes. National laws on arbitration have been modernized on all continents. International treaties on arbitration have been signed or adhered to with impressive success. Arbitration has become part of the curricula of large numbers of law schools. With the gradual removal of political and trade barriers and the rapid globalization of the world economy, new challenges have been created for arbitration institutions in response to the

growing demand of parties for certainty and predictability, greater rapidity and flexibility as well as neutrality and efficacy in the resolution of international disputes.

Since the International Court of Arbitration was established in 1923, ICC arbitration has been constantly nourished by the experience gathered by the ICC International Court of Arbitration in the course of administering more than twelve thousand international arbitration cases, now involving each year parties and arbitrators from over 100 countries and from a diversity of legal, economic, cultural and linguistic backgrounds.

The present ICC Rules of Arbitration came into effect on 1 January 1998. They are the result of an intensive, worldwide consultation process and constitute the first major revision of the Rules in more than 20 years. The changes made are designed to reduce delays and ambiguities and to fill certain gaps, taking into account the evolution of arbitration practice. The basic features of the ICC arbitration system have not been altered, however, notably its universality and flexibility, as well as the central role played by the ICC Court in the administration of arbitral cases.

Every ICC arbitration is conducted by an arbitral tribunal with responsibility for examining the merits of the case and rendering a final award. Each year, ICC arbitrations are held in some 40 countries, in most major languages and with arbitrators of some 60 different nationalities. The work of those arbitral tribunals is monitored by the ICC Court, which meets weekly all year round. Currently composed of over 115 members from some 80 countries, the Court organizes and supervises arbitrations held under the ICC Rules of Arbitration. The Court must remain constantly alert to changes in the law and the practice of arbitration in all parts of the world and must adapt its working methods to the evolving needs of parties and arbitrators. For the day-to-day management of cases in many languages, the ICC Court is supported by a Secretariat based at the headquarters of the International Chamber of Commerce, in Paris.

Although the ICC Rules of Arbitration have been especially designed for arbitrations in an international context, they may also be used for non-international cases.

In this edition of ICC Publication 808, Article 3 of Appendix III to the ICC Rules of Arbitration has been modified following the adoption of the Rules of ICC as Appointing Authority in UNCITRAL or Other Ad Hoc Arbitration Proceedings.

December 2003

# STANDARD ICC ARBITRATION CLAUSE

The ICC recommends that all parties wishing to make reference to ICC arbitration in their contracts use the following standard clause.
Parties are reminded that it may be desirable for them to stipulate in the arbitration clause itself the law governing the contract, the number of arbitrators and the place and language of the arbitration. The parties' free choice of the law governing the contract and of the place and language of the arbitration is not limited by the ICC Rules of Arbitration.
Attention is called to the fact that the laws of certain countries require that parties to contracts expressly accept arbitration clauses, sometimes in a precise and particular manner.
**"All disputes arising out of or in connection with the present contract**

shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules."

# RULES OF ARBITRATION OF THE
# INTERNATIONAL CHAMBER OF COMMERCE
### In force as from 1 January 1998
### Costs scales effective as of 1 July 2003

## INTRODUCTORY PROVISIONS

### Article 1
### International Court of Arbitration

**1**
The International Court of Arbitration (the "Court") of the International Chamber of Commerce (the "ICC") is the arbitration body attached to the ICC. The statutes of the Court are set forth in Appendix I. Members of the Court are appointed by the World Council of the ICC. The function of the Court is to provide for the settlement by arbitration of business disputes of an international character in accordance with the Rules of Arbitration of the International Chamber of Commerce (the "Rules"). If so empowered by an arbitration agreement, the Court shall also provide for the settlement by arbitration in accordance with these Rules of business disputes not of an international character.

**2**
The Court does not itself settle disputes. It has the function of ensuring the application of these Rules. It draws up its own Internal Rules (Appendix II).

**3**
The Chairman of the Court, or, in the Chairman's absence or otherwise at his request, one of its Vice-Chairmen shall have the power to take urgent decisions on behalf of the Court, provided that any such decision is reported to the Court at its next session.

**4**
As provided for in its Internal Rules, the Court may delegate to one or more committees composed of its members the power to take certain decisions, provided that any such decision is reported to the Court at its next session.

**5**
The Secretariat of the Court (the "Secretariat") under the direction of its Secretary General (the "Secretary General") shall have its seat at the headquarters of the ICC.

### Article 2

**Definitions**

In these Rules:
(i) "Arbitral Tribunal" includes one or more arbitrators.
(ii) "Claimant" includes one or more claimants and "Respondent" includes one or more respondents.
(iii) "Award" includes, *inter alia*, an interim, partial or final Award.

**Article 3**
**Written Notifications or Communications; Time Limits**

**1**
All pleadings and other written communications submitted by any party, as well as all documents annexed thereto, shall be supplied in a number of copies sufficient to provide one copy for each party, plus one for each arbitrator, and one for the Secretariat. A copy of any communication from the Arbitral Tribunal to the parties shall be sent to the Secretariat.

**2**
All notifications or communications from the Secretariat and the Arbitral Tribunal shall be made to the last address of the party or its representative for whom the same are intended, as notified either by the party in question or by the other party. Such notification or communication may be made by delivery against receipt, registered post, courier, facsimile transmission, telex, telegram or any other means of telecommunication that provides a record of the sending thereof.

**3**
A notification or communication shall be deemed to have been made on the day it was received by the party itself or by its representative, or would have been received if made in accordance with the preceding paragraph.

**4**
Periods of time specified in or fixed under the present Rules, shall start to run on the day following the date a notification or communication is deemed to have been made in accordance with the preceding paragraph. When the day next following such date is an official holiday, or a non-business day in the country where the notification or communication is deemed to have been made, the period of time shall commence on the first following business day. Official holidays and non-business days are included in the calculation of the period of time. If the last day of the relevant period of time granted is an official holiday or a non-business day in the country where the notification or communication is deemed to have been made, the period of time shall expire at the end of the first following business day.

## COMMENCING THE ARBITRATION

**Article 4**
**Request for Arbitration**

1

A party wishing to have recourse to arbitration under these Rules shall submit its Request for Arbitration (the "Request") to the Secretariat, which shall notify the Claimant and Respondent of the receipt of the Request and the date of such receipt.

2

The date on which the Request is received by the Secretariat shall, for all purposes, be deemed to be the date of the commencement of the arbitral proceedings.

3

The Request shall, *inter alia*, contain the following information:
a) the name in full, description and address of each of the parties;
b) a description of the nature and circumstances of the dispute giving rise to the claim(s);
c) a statement of the relief sought, including, to the extent possible, an indication of any amount(s) claimed;
d) the relevant agreements and, in particular, the arbitration agreement;
e) all relevant particulars concerning the number of arbitrators and their choice in accordance with the provisions of Articles 8, 9 and 10, and any nomination of an arbitrator required thereby; and
f) any comments as to the place of arbitration, the applicable rules of law and the language of the arbitration.

4

Together with the Request, the Claimant shall submit the number of copies thereof required by Article 3(1) and shall make the advance payment on administrative expenses required by Appendix III ("Arbitration Costs and Fees") in force on the date the Request is submitted. In the event that the Claimant fails to comply with either of these requirements, the Secretariat may fix a time limit within which the Claimant must comply, failing which the file shall be closed without prejudice to the right of the Claimant to submit the same claims at a later date in another Request.

5

The Secretariat shall send a copy of the Request and the documents annexed thereto to the Respondent for its Answer to the Request once the Secretariat has sufficient copies of the Request and the required advance payment.

6

When a party submits a Request in connection with a legal relationship in respect of which arbitration proceedings between the same parties are already pending under these Rules, the Court may, at the request of a party, decide to include the claims contained in the Request in the pending proceedings provided that the Terms of Reference have not been signed or approved by the Court. Once the Terms of Reference have been signed or approved by the Court, claims may only be included in the pending proceedings subject to the provisions of Article 19.

**Article 5**
**Answer to the Request; Counterclaims**

1

Within 30 days from the receipt of the Request from the Secretariat, the Respondent shall file an Answer (the "Answer") which shall, *inter alia*, contain the following information:

a) its name in full, description and address;

b) its comments as to the nature and circumstances of the dispute giving rise to the claim(s);

c) its response to the relief sought;

d) any comments concerning the number of arbitrators and their choice in light of the Claimant's proposals and in accordance with the provisions of Articles 8, 9 and 10, and any nomination of an arbitrator required thereby; and

e) any comments as to the place of arbitration, the applicable rules of law and the language of the arbitration.

### 2

The Secretariat may grant the Respondent an extension of the time for filing the Answer, provided the application for such an extension contains the Respondent's comments concerning the number of arbitrators and their choice and, where required by Articles 8, 9 and 10, the nomination of an arbitrator. If the Respondent fails to do so, the Court shall proceed in accordance with these Rules.

### 3

The Answer shall be supplied to the Secretariat in the number of copies specified by Article 3(1).

### 4

A copy of the Answer and the documents annexed thereto shall be communicated by the Secretariat to the Claimant.

### 5

Any counterclaim(s) made by the Respondent shall be filed with its Answer and shall provide:

a) a description of the nature and circumstances of the dispute giving rise to the counterclaim(s); and

b) a statement of the relief sought, including, to the extent possible, an indication of any amount(s) counterclaimed.

### 6

The Claimant shall file a Reply to any counterclaim within 30 days from the date of receipt of the counterclaim(s) communicated by the Secretariat. The Secretariat may grant the Claimant an extension of time for filing the Reply.

### Article 6
### Effect of the Arbitration Agreement

### 1

Where the parties have agreed to submit to arbitration under the Rules, they shall be deemed to have submitted *ipso facto* to the Rules in effect on the date of commencement of the arbitration proceedings, unless they have agreed to submit to the Rules in effect on the date of their arbitration agreement.

### 2

If the Respondent does not file an Answer, as provided by Article 5, or if any party raises one or more pleas concerning the existence, validity or scope of

the arbitration agreement, the Court may decide, without prejudice to the admissibility or merits of the plea or pleas, that the arbitration shall proceed if it is *prima facie* satisfied that an arbitration agreement under the Rules may exist. In such a case, any decision as to the jurisdiction of the Arbitral Tribunal shall be taken by the Arbitral Tribunal itself. If the Court is not so satisfied, the parties shall be notified that the arbitration cannot proceed. In such a case, any party retains the right to ask any court having jurisdiction whether or not there is a binding arbitration agreement.

**3**
If any of the parties refuses or fails to take part in the arbitration or any stage thereof, the arbitration shall proceed notwithstanding such refusal or failure.

**4**
Unless otherwise agreed, the Arbitral Tribunal shall not cease to have jurisdiction by reason of any claim that the contract is null and void or allegation that it is non-existent, provided that the Arbitral Tribunal upholds the validity of the arbitration agreement. The Arbitral Tribunal shall continue to have jurisdiction to determine the respective rights of the parties and to adjudicate their claims and pleas even though the contract itself may be non-existent or null and void.

# THE ARBITRAL TRIBUNAL

**Article 7**
**General Provisions**

**1**
Every arbitrator must be and remain independent of the parties involved in the arbitration.

**2**
Before appointment or confirmation, a prospective arbitrator shall sign a statement of independence and disclose in writing to the Secretariat any facts or circumstances which might be of such a nature as to call into question the arbitrator's independence in the eyes of the parties. The Secretariat shall provide such information to the parties in writing and fix a time limit for any comments from them.

**3**
An arbitrator shall immediately disclose in writing to the Secretariat and to the parties any facts or circumstances of a similar nature which may arise during the arbitration.

**4**
The decisions of the Court as to the appointment, confirmation, challenge or replacement of an arbitrator shall be final and the reasons for such decisions shall not be communicated.

**5**
By accepting to serve, every arbitrator undertakes to carry out his

responsibilities in accordance with these Rules.

**6**

Insofar as the parties have not provided otherwise, the Arbitral Tribunal shall be constituted in accordance with the provisions of Articles 8, 9 and 10.

## Article 8
## Number of Arbitrators

**1**

The disputes shall be decided by a sole arbitrator or by three arbitrators.

**2**

Where the parties have not agreed upon the number of arbitrators, the Court shall appoint a sole arbitrator, save where it appears to the Court that the dispute is such as to warrant the appointment of three arbitrators. In such case, the Claimant shall nominate an arbitrator within a period of 15 days from the receipt of the notification of the decision of the Court, and the Respondent shall nominate an arbitrator within a period of 15 days from the receipt of the notification of the nomination made by the Claimant.

**3**

Where the parties have agreed that the dispute shall be settled by a sole arbitrator, they may, by agreement, nominate the sole arbitrator for confirmation. If the parties fail to nominate a sole arbitrator within 30 days from the date when the Claimant's Request for Arbitration has been received by the other party, or within such additional time as may be allowed by the Secretariat, the sole arbitrator shall be appointed by the Court.

**4**

Where the dispute is to be referred to three arbitrators, each party shall nominate in the Request and the Answer, respectively, one arbitrator for confirmation. If a party fails to nominate an arbitrator, the appointment shall be made by the Court. The third arbitrator, who will act as chairman of the Arbitral Tribunal, shall be appointed by the Court, unless the parties have agreed upon another procedure for such appointment, in which case the nomination will be subject to confirmation pursuant to Article 9. Should such procedure not result in a nomination within the time limit fixed by the parties or the Court, the third arbitrator shall be appointed by the Court.

## Article 9
## Appointment and Confirmation of the Arbitrators

**1**

In confirming or appointing arbitrators, the Court shall consider the prospective arbitrator's nationality, residence and other relationships with the countries of which the parties or the other arbitrators are nationals and the prospective arbitrator's availability and ability to conduct the arbitration in accordance with these Rules. The same shall apply where the Secretary General confirms arbitrators pursuant to Article 9(2).

**2**

The Secretary General may confirm as co-arbitrators, sole arbitrators and

chairmen of Arbitral Tribunals persons nominated by the parties or pursuant to their particular agreements, provided they have filed a statement of independence without qualification or a qualified statement of independence has not given rise to objections. Such confirmation shall be reported to the Court at its next session. If the Secretary General considers that a co-arbitrator, sole arbitrator or chairman of an Arbitral Tribunal should not be confirmed, the matter shall be submitted to the Court.

3

Where the Court is to appoint a sole arbitrator or the chairman of an Arbitral Tribunal, it shall make the appointment upon a proposal of a National Committee of the ICC that it considers to be appropriate. If the Court does not accept the proposal made, or if the National Committee fails to make the proposal requested within the time limit fixed by the Court, the Court may repeat its request or may request a proposal from another National Committee that it considers to be appropriate.

4

Where the Court considers that the circumstances so demand, it may choose the sole arbitrator or the chairman of the Arbitral Tribunal from a country where there is no National Committee, provided that neither of the parties objects within the time limit fixed by the Court.

5

The sole arbitrator or the chairman of the Arbitral Tribunal shall be of a nationality other than those of the parties. However, in suitable circumstances and provided that neither of the parties objects within the time limit fixed by the Court, the sole arbitrator or the chairman of the Arbitral Tribunal may be chosen from a country of which any of the parties is a national.

6

Where the Court is to appoint an arbitrator on behalf of a party which has failed to nominate one, it shall make the appointment upon a proposal of the National Committee of the country of which that party is a national. If the Court does not accept the proposal made, or if the National Committee fails to make the proposal requested within the time limit fixed by the Court, or if the country of which the said party is a national has no National Committee, the Court shall be at liberty to choose any person whom it regards as suitable. The Secretariat shall inform the National Committee, if one exists, of the country of which such person is a national.

### Article 10
### Multiple Parties

1

Where there are multiple parties, whether as Claimant or as Respondent, and where the dispute is to be referred to three arbitrators, the multiple Claimants, jointly, and the multiple Respondents, jointly, shall nominate an arbitrator for confirmation pursuant to Article 9.

2

In the absence of such a joint nomination and where all parties are unable to agree to a method for the constitution of the Arbitral Tribunal, the Court may appoint each member of the Arbitral Tribunal and shall designate one of them

to act as chairman. In such case, the Court shall be at liberty to choose any person it regards as suitable to act as arbitrator, applying Article 9 when it considers this appropriate.

## Article 11
## Challenge of Arbitrators

**1**
A challenge of an arbitrator, whether for an alleged lack of independence or otherwise, shall be made by the submission to the Secretariat of a written statement specifying the facts and circumstances on which the challenge is based.

**2**
For a challenge to be admissible, it must be sent by a party either within 30 days from receipt by that party of the notification of the appointment or confirmation of the arbitrator, or within 30 days from the date when the party making the challenge was informed of the facts and circumstances on which the challenge is based if such date is subsequent to the receipt of such notification.

**3**
The Court shall decide on the admissibility, and, at the same time, if necessary, on the merits of a challenge after the Secretariat has afforded an opportunity for the arbitrator concerned, the other party or parties and any other members of the Arbitral Tribunal to comment in writing within a suitable period of time. Such comments shall be communicated to the parties and to the arbitrators.

## Article 12
## Replacement of Arbitrators

**1**
An arbitrator shall be replaced upon his death, upon the acceptance by the Court of the arbitrator's resignation, upon acceptance by the Court of a challenge or, upon the request of all the parties.

**2**
An arbitrator shall also be replaced on the Court's own initiative when it decides that he is prevented *de jure* or *de facto* from fulfilling his functions, or that he is not fulfilling his functions in accordance with the Rules or within the prescribed time limits.

**3**
When, on the basis of information that has come to its attention, the Court considers applying Article 12(2), it shall decide on the matter after the arbitrator concerned, the parties and any other members of the Arbitral Tribunal have had an opportunity to comment in writing within a suitable period of time. Such comments shall be communicated to the parties and to the arbitrators.

**4**
When an arbitrator is to be replaced, the Court has discretion to decide whether or not to follow the original nominating process. Once reconstituted,

and after having invited the parties to comment, the Arbitral Tribunal shall determine if and to what extent prior proceedings shall be repeated before the reconstituted Arbitral Tribunal.

**5**
Subsequent to the closing of the proceedings, instead of replacing an arbitrator who has died or been removed by the Court pursuant to Articles 12(1) and 12(2), the Court may decide, when it considers it appropriate, that the remaining arbitrators shall continue the arbitration. In making such determination, the Court shall take into account the views of the remaining arbitrators and of the parties and such other matters that it considers appropriate in the circumstances.

# THE ARBITRAL PROCEEDINGS

**Article 13**
**Transmission of the File to the Arbitral Tribunal**

The Secretariat shall transmit the file to the Arbitral Tribunal as soon as it has been constituted, provided the advance on costs requested by the Secretariat at this stage has been paid.

**Article 14**
**Place of the Arbitration**

**1**
The place of the arbitration shall be fixed by the Court unless agreed upon by the parties.

**2**
The Arbitral Tribunal may, after consultation with the parties, conduct hearings and meetings at any location it considers appropriate unless otherwise agreed by the parties.

**3**
The Arbitral Tribunal may deliberate at any location it considers appropriate.

**Article 15**
**Rules Governing the Proceedings**

**1**
The proceedings before the Arbitral Tribunal shall be governed by these Rules, and, where these Rules are silent by any rules which the parties or, failing them, the Arbitral Tribunal may settle on, whether or not reference is thereby made to the rules of procedure of a national law to be applied to the arbitration.

**2**
In all cases, the Arbitral Tribunal shall act fairly and impartially and ensure that each party has a reasonable opportunity to present its case.

## Article 16
## Language of the Arbitration

In the absence of an agreement by the parties, the Arbitral Tribunal shall determine the language or languages of the arbitration, due regard being given to all relevant circumstances, including the language of the contract.

## Article 17
## Applicable Rules of Law

1
The parties shall be free to agree upon the rules of law to be applied by the Arbitral Tribunal to the merits of the dispute. In the absence of any such agreement, the Arbitral Tribunal shall apply the rules of law which it determines to be appropriate.

2
In all cases the Arbitral Tribunal shall take account of the provisions of the contract and the relevant trade usages.

3
The Arbitral Tribunal shall assume the powers of an *amiable compositeur* or decide *ex aequo et bono* only if the parties have agreed to give it such powers.

## Article 18
## Terms of Reference; Procedural Timetable

1
As soon as it has received the file from the Secretariat, the Arbitral Tribunal shall draw up, on the basis of documents or in the presence of the parties and in the light of their most recent submissions, a document defining its Terms of Reference. This document shall include the following particulars:
a) the full names and descriptions of the parties;
b) the addresses of the parties to which notifications and communications arising in the course of the arbitration may be made;
c) a summary of the parties' respective claims and of the relief sought by each party, with an indication to the extent possible of the amounts claimed or counterclaimed;
d) unless the Arbitral Tribunal considers it inappropriate, a list of issues to be determined;
e) the full names, descriptions and addresses of the arbitrators;
f) the place of the arbitration; and
g) particulars of the applicable procedural rules and, if such is the case, reference to the power conferred upon the Arbitral Tribunal to act as *amiable compositeur* or to decide *ex aequo et bono*.

2
The Terms of Reference shall be signed by the parties and the Arbitral Tribunal. Within two months of the date on which the file has been transmitted to it, the Arbitral Tribunal shall transmit to the Court the Terms of Reference signed by it and by the parties. The Court may extend this time limit pursuant to a

reasoned request from the Arbitral Tribunal or on its own initiative if it decides it is necessary to do so.

**3**

If any of the parties refuses to take part in the drawing up of the Terms of Reference or to sign the same, they shall be submitted to the Court for approval. When the Terms of Reference have been signed in accordance with Article 18(2) or approved by the Court, the arbitration shall proceed.

**4**

When drawing up the Terms of Reference, or as soon as possible thereafter, the Arbitral Tribunal, after having consulted the parties, shall establish in a separate document a provisional timetable that it intends to follow for the conduct of the arbitration and shall communicate it to the Court and the parties. Any subsequent modifications of the provisional timetable shall be communicated to the Court and the parties.

**Article 19**
**New Claims**

After the Terms of Reference have been signed or approved by the Court, no party shall make new claims or counterclaims which fall outside the limits of the Terms of Reference unless it has been authorized to do so by the Arbitral Tribunal, which shall consider the nature of such new claims or counterclaims, the stage of the arbitration and other relevant circumstances.

**Article 20**
**Establishing the Facts of the Case**

**1**

The Arbitral Tribunal shall proceed within as short a time as possible to establish the facts of the case by all appropriate means.

**2**

After studying the written submissions of the parties and all documents relied upon, the Arbitral Tribunal shall hear the parties together in person if any of them so requests or, failing such a request, it may of its own motion decide to hear them.

**3**

The Arbitral Tribunal may decide to hear witnesses, experts appointed by the parties or any other person, in the presence of the parties, or in their absence provided they have been duly summoned.

**4**

The Arbitral Tribunal, after having consulted the parties, may appoint one or more experts, define their terms of reference and receive their reports. At the request of a party, the parties shall be given the opportunity to question at a hearing any such expert appointed by the Tribunal.

**5**

At any time during the proceedings, the Arbitral Tribunal may summon any

Unless the parties have otherwise agreed, as soon as the file has been transmitted to it, the Arbitral Tribunal may, at the request of a party, order any interim or conservatory measure it deems appropriate. The Arbitral Tribunal may make the granting of any such measure subject to appropriate security being furnished by the requesting party. Any such measure shall take the form of an order, giving reasons, or of an Award, as the Arbitral Tribunal considers appropriate.

**2**
Before the file is transmitted to the Arbitral Tribunal, and in appropriate circumstances even thereafter, the parties may apply to any competent judicial authority for interim or conservatory measures. The application of a party to a judicial authority for such measures or for the implementation of any such measures ordered by an Arbitral Tribunal shall not be deemed to be an infringement or a waiver of the arbitration agreement and shall not affect the relevant powers reserved to the Arbitral Tribunal. Any such application and any measures taken by the judicial authority must be notified without delay to the Secretariat. The Secretariat shall inform the Arbitral Tribunal thereof.

## AWARDS

### Article 24
### Time Limit for the Award

**1**
The time limit within which the Arbitral Tribunal must render its final Award is six months. Such time limit shall start to run from the date of the last signature by the Arbitral Tribunal or of the parties of the Terms of Reference, or, in the case of application of Article 18(3), the date of the notification to the Arbitral Tribunal by the Secretariat of the approval of the Terms of Reference by the Court.

**2**
The Court may extend this time limit pursuant to a reasoned request from the Arbitral Tribunal or on its own initiative if it decides it is necessary to do so.

### Article 25
### Making of the Award

**1**
When the Arbitral Tribunal is composed of more than one arbitrator, an Award is given by a majority decision. If there be no majority, the Award shall be made by the chairman of the Arbitral Tribunal alone.

**2**
The Award shall state the reasons upon which it is based.

**3**
The Award shall be deemed to be made at the place of the arbitration and on the date stated therein.

ICC International Court of Arbitration - Rules of Arbitrat.                                      2/26/04 11:12 AM

**Article 26**
**Award by Consent**

If the parties reach a settlement after the file has been transmitted to the Arbitral Tribunal in accordance with Article 13, the settlement shall be recorded in the form of an Award made by consent of the parties if so requested by the parties and if the Arbitral Tribunal agrees to do so.


**Article 27**
**Scrutiny of the Award by the Court**

Before signing any Award, the Arbitral Tribunal shall submit it in draft form to the Court. The Court may lay down modifications as to the form of the Award and, without affecting the Arbitral Tribunal's liberty of decision, may also draw its attention to points of substance. No Award shall be rendered by the Arbitral Tribunal until it has been approved by the Court as to its form.


**Article 28**
**Notification, Deposit and Enforceability of the Award**

1
Once an Award has been made, the Secretariat shall notify to the parties the text signed by the Arbitral Tribunal, provided always that the costs of the arbitration have been fully paid to the ICC by the parties or by one of them.

2
Additional copies certified true by the Secretary General shall be made available on request and at any time to the parties, but to no one else.

3
By virtue of the notification made in accordance with Paragraph 1 of this Article, the parties waive any other form of notification or deposit on the part of the Arbitral Tribunal.

4
An original of each Award made in accordance with the present Rules shall be deposited with the Secretariat.

5
The Arbitral Tribunal and the Secretariat shall assist the parties in complying with whatever further formalities may be necessary.

6
Every Award shall be binding on the parties. By submitting the dispute to arbitration under these Rules, the parties undertake to carry out any Award without delay and shall be deemed to have waived their right to any form of recourse insofar as such waiver can validly be made.


**Article 29**

**Correction and Interpretation of the Award**

**1**
On its own initiative, the Arbitral Tribunal may correct a clerical, computational or typographical error, or any errors of similar nature contained in an Award, provided such correction is submitted for approval to the Court within 30 days of the date of such Award.

**2**
Any application of a party for the correction of an error of the kind referred to in Article 29(1), or for the interpretation of an Award, must be made to the Secretariat within 30 days of the receipt of the Award by such party, in a number of copies as stated in Article 3(1). After transmittal of the application to the Arbitral Tribunal, it shall grant the other party a short time limit, normally not exceeding 30 days, from the receipt of the application by that party to submit any comments thereon. If the Arbitral Tribunal decides to correct or interpret the Award, it shall submit its decision in draft form to the Court not later than 30 days following the expiration of the time limit for the receipt of any comments from the other party or within such other period as the Court may decide.

**3**
The decision to correct or to interpret the Award shall take the form of an addendum and shall constitute part of the Award. The provisions of Articles 25, 27 and 28 shall apply *mutatis mutandis.*

# COSTS

**Article 30**
**Advance to Cover the Costs of the Arbitration**

**1**
After receipt of the Request, the Secretary General may request the Claimant to pay a provisional advance in an amount intended to cover the costs of arbitration until the Terms of Reference have been drawn up.

**2**
As soon as practicable, the Court shall fix the advance on costs in an amount likely to cover the fees and expenses of the arbitrators and the ICC administrative costs for the claims and counterclaims which have been referred to it by the parties. This amount may be subject to readjustment at any time during the arbitration. Where, apart from the claims, counterclaims are submitted, the Court may fix separate advances on costs for the claims and the counterclaims.

**3**
The advance on costs fixed by the Court shall be payable in equal shares by the Claimant and the Respondent. Any provisional advance paid on the basis of Article 30(1) will be considered as a partial payment thereof. However, any party shall be free to pay the whole of the advance on costs in respect of the principal claim or the counterclaim should the other party fail to pay its share.

When the Court has set separate advances on costs in accordance with Article 30(2), each of the parties shall pay the advance on costs corresponding to its claims.

**4**

When a request for an advance on costs has not been complied with, and after consultation with the Arbitral Tribunal, the Secretary General may direct the Arbitral Tribunal to suspend its work and set a time limit, which must be not less than 15 days, on the expiry of which the relevant claims, or counterclaims, shall be considered as withdrawn. Should the party in question wish to object to this measure, it must make a request within the aforementioned period for the matter to be decided by the Court. Such party shall not be prevented, on the ground of such withdrawal, from reintroducing the same claims or counterclaims at a later date in another proceeding.

**5**

If one of the parties claims a right to a set-off with regard to either claims or counterclaims, such set-off shall be taken into account in determining the advance to cover the costs of arbitration in the same way as a separate claim insofar as it may require the Arbitral Tribunal to consider additional matters.

**Article 31**
**Decision as to the Costs of the Arbitration**

**1**

The costs of the arbitration shall include the fees and expenses of the arbitrators and the ICC administrative expenses fixed by the Court, in accordance with the scale in force at the time of the commencement of the arbitral proceedings, as well as the fees and expenses of any experts appointed by the Arbitral Tribunal and the reasonable legal and other costs incurred by the parties for the arbitration.

**2**

The Court may fix the fees of the arbitrators at a figure higher or lower than that which would result from the application of the relevant scale should this be deemed necessary due to the exceptional circumstances of the case. Decisions on costs other than those fixed by the Court may be taken by the Arbitral Tribunal at any time during the proceedings.

**3**

The final Award shall fix the costs of the arbitration and decide which of the parties shall bear them or in what proportion they shall be borne by the parties.

# MISCELLANEOUS

**Article 32**
**Modified Time Limits**

**1**

The parties may agree to shorten the various time limits set out in these Rules.

Any such agreement entered into subsequent to the constitution of an Arbitral Tribunal shall become effective only upon the approval of the Arbitral Tribunal.

**2**
The Court, on its own initiative, may extend any time limit which has been modified pursuant to Article 32(1) if it decides that it is necessary to do so in order that the Arbitral Tribunal or the Court may fulfil their responsibilities in accordance with these Rules.

### Article 33
### Waiver

A party which proceeds with the arbitration without raising its objection to a failure to comply with any provision of these Rules, or of any other rules applicable to the proceedings, any direction given by the Arbitral Tribunal, or any requirement under the arbitration agreement relating to the constitution of the Arbitral Tribunal, or to the conduct of the proceedings, shall be deemed to have waived its right to object.

### Article 34
### Exclusion of Liability

Neither the arbitrators, nor the Court and its members, nor the ICC and its employees, nor the ICC National Committees shall be liable to any person for any act or omission in connection with the arbitration.

### Article 35
### General Rule

In all matters not expressly provided for in these Rules, the Court and the Arbitral Tribunal shall act in the spirit of these Rules and shall make every effort to make sure that the Award is enforceable at law.

# APPENDIX I
# STATUTES OF THE INTERNATIONAL
# COURT OF ARBITRATION OF THE ICC

### Article 1
### Function

**1**
The function of the International Court of Arbitration of the International Chamber of Commerce (the "Court") is to ensure the application of the Rules of Arbitration of the International Chamber of Commerce, and it has all the necessary powers for that purpose.

**2**

As an autonomous body, it carries out these functions in complete independence from the ICC and its organs.

**3**
Its members are independent from the ICC National Committees.

### Article 2
### Composition of the Court

The Court shall consist of a Chairman, Vice-Chairmen, and members and alternate members (collectively designated as members). In its work it is assisted by its Secretariat (Secretariat of the Court).

### Article 3
### Appointment

**1**
The Chairman is elected by the ICC World Council upon the recommendation of the Executive Board of the ICC.

**2**
The ICC World Council appoints the Vice-Chairmen of the Court from among the members of the Court or otherwise.

**3**
Its members are appointed by the ICC World Council on the proposal of National Committees, one member for each Committee.

**4**
On the proposal of the Chairman of the Court, the World Council may appoint alternate members.

**5**
The term of office of all members is three years. If a member is no longer in a position to exercise his functions, his successor is appointed by the World Council for the remainder of the term.

### Article 4
### Plenary Session of the Court

The Plenary Sessions of the Court are presided over by the Chairman or, in his absence, by one of the Vice-Chairmen designated by him. The deliberations shall be valid when at least six members are present. Decisions are taken by a majority vote, the Chairman having a casting vote in the event of a tie.

### Article 5
### Committees

The Court may set up one or more Committees and establish the functions and organization of such Committees.

## Article 6
## Confidentiality

The work of the Court is of a confidential nature which must be respected by everyone who participates in that work in whatever capacity. The Court lays down the rules regarding the persons who can attend the meetings of the Court and its Committees and who are entitled to have access to the materials submitted to the Court and its Secretariat.

## Article 7
## Modification of the Rules of Arbitration

Any proposal of the Court for a modification of the Rules is laid before the Commission on Arbitration before submission to the Executive Board and the World Council of the ICC for approval.

# APPENDIX II
# INTERNAL RULES OF THE INTERNATIONAL
# COURT OF ARBITRATION OF THE ICC

## Article 1
## Confidential Character of the Work of the International Court of Arbitration

1
The sessions of the Court, whether plenary or those of a Committee of the Court, are open only to its members and to the Secretariat.

2
However, in exceptional circumstances, the Chairman of the Court may invite other persons to attend. Such persons must respect the confidential nature of the work of the Court.

3
The documents submitted to the Court, or drawn up by it in the course of its proceedings, are communicated only to the members of the Court and to the Secretariat and to persons authorized by the Chairman to attend Court sessions.

4
The Chairman or the Secretary General of the Court may authorize researchers undertaking work of a scientific nature on international trade law to acquaint themselves with awards and other documents of general interest, with the exception of memoranda, notes, statements and documents remitted by the parties within the framework of arbitration proceedings.

5

Such authorization shall not be given unless the beneficiary has undertaken to respect the confidential character of the documents made available and to refrain from any publication in their respect without having previously submitted the text for approval to the Secretary General of the Court.

**6**

The Secretariat will in each case submitted to arbitration under the Rules retain in the archives of the Court all Awards, Terms of Reference, and decisions of the Court, as well as copies of the pertinent correspondence of the Secretariat.

**7**

Any documents, communications or correspondence submitted by the parties or the arbitrators may be destroyed unless a party or an arbitrator requests in writing within a period fixed by the Secretariat the return of such documents. All related costs and expenses for the return of those documents shall be paid by such party or arbitrator.

**Article 2**
**Participation of Members of the International Court of Arbitration in ICC Arbitration**

**1**

The Chairman and the members of the Secretariat of the Court may not act as arbitrators or as counsel in cases submitted to ICC arbitration.

**2**

The Court shall not appoint Vice-Chairmen or members of the Court as arbitrators. They may, however, be proposed for such duties by one or more of the parties, or,pursuant to any other procedure agreed upon by the parties, subject to confirmation.

**3**

When the Chairman, a Vice-Chairman or a member of the Court or of the Secretariat is involved in any capacity whatsoever in proceedings pending before the Court, such person must inform the Secretary General of the Court upon becoming aware of such involvement.

**4**

Such person must refrain from participating in the discussions or in the decisions of the Court concerning the proceedings and must be absent from the courtroom whenever the matter is considered.

**5**

ICC National Committees which proposed them for appointment by the ICC World Council.

**2**
Furthermore, they must regard as confidential, vis-à-vis the said National Committees, any information concerning individual cases with which they have become acquainted in their capacity as members of the Court, except when they have been requested by the Chairman of the Court or by its Secretary General to communicate specific information to their respective National Committee.

## Article 4
## Committee of the Court

**1**
In accordance with the provisions of Article 1 (4) of the Rules and Article 5 of its Statutes (Appendix I), the Court hereby establishes a Committee of the Court.

**2**
The members of the Committee consist of a Chairman and at least two other members. The Chairman of the Court acts as the Chairman of the Committee. If absent, the Chairman may designate a Vice-Chairman of the Court or, in exceptional circumstances, another member of the Court as Chairman of the Committee.

**3**
The other two members of the Committee are appointed by the Court from among the Vice-Chairmen or the other members of the Court. At each Plenary Session the Court appoints the members who are to attend the meetings of the Committee to be held before the next Plenary Session.

**4**
The Committee meets when convened by its Chairman. Two members constitute a quorum.

**5**
(a) The Court shall determine the decisions that may be taken by the Committee.
(b) The decisions of the Committee are taken unanimously.
(c) When the Committee cannot reach a decision or deems it preferable to abstain, it transfers the case to the next Plenary Session, making any suggestions it deems appropriate.
(d) The Committee's decisions are brought to the notice of the Court at its next Plenary Session.

## Article 5
## Court Secretariat

**1**
In case of absence, the Secretary General may delegate to the General Counsel and Deputy Secretary General the authority to confirm arbitrators, to certify true copies of Awards and to request the payment of a provisional

advance, respectively provided for in Articles 9(2), 28(2) and 30(1) of the Rules.

**2**
The Secretariat may, with the approval of the Court, issue notes and other documents for the information of the parties and the arbitrators, or as necessary for the proper conduct of the arbitral proceedings.

### Article 6
### Scrutiny of Arbitral Awards

When the Court scrutinizes draft Awards in accordance with Article 27 of the Rules, it considers, to the extent practicable, the requirements of mandatory law at the place of arbitration.

# APPENDIX III
# ARBITRATION COSTS AND FEES

### Article 1
### Advance on Costs

**1**
Each request to commence an arbitration pursuant to the Rules must be accompanied by an advance payment of US$ 2500 on the administrative expenses. Such payment is nonrefundable, and shall be credited to the Claimant's portion of the advance on costs.

**2**
The provisional advance fixed by the Secretary General according to Article 30(1) of the Rules shall normally not exceed the amount obtained by adding together the administrative expenses, the minimum of the fees (as set out in the scale hereinafter) based upon the amount of the claim and the expected reimbursable expenses of the Arbitral Tribunal incurred with respect to the drafting of the Terms of Reference. If such amount is not quantified, the provisional advance shall be fixed at the discretion of the Secretary General. Payment by the Claimant shall be credited to its share of the advance on costs fixed by the Court.

**3**
In general, after the Terms of Reference have been signed or approved by the Court and the provisional timetable has been established, the Arbitral Tribunal shall, in accordance with Article 30(4) of the Rules, proceed only with respect to those claims or counterclaims in regard to which the whole of the advance on costs has been paid.

**4**
The advance on costs fixed by the Court according to Article 30(2) of the Rules comprises the fees of the arbitrator or arbitrators (hereinafter referred to as "arbitrator"), any arbitration-related expenses of the arbitrator and the administrative expenses.

**5**
Each party shall pay in cash its share of the total advance on costs. However, if its share exceeds an amount fixed from time to time by the Court, a party may post a bank guarantee for this additional amount.

**6**
A party that has already paid in full its share of the advance on costs fixed by the Court may, in accordance with Article 30(3) of the Rules, pay the unpaid portion of the advance owed by the defaulting party by posting a bank guarantee.

**7**
When the Court has fixed separate advances on costs pursuant to Article 30(2) of the Rules, the Secretariat shall invite each party to pay the amount of the advance corresponding to its respective claim(s).

**8**
When, as a result of the fixing of separate advances on costs, the separate advance fixed for the claim of either party exceeds one half of such global advance as was previously fixed (in respect of the same claims and counterclaims that are the subject of separate advances), a bank guarantee may be posted to cover any such excess amount. In the event that the amount of the separate advance is subsequently increased, at least one half of the increase shall be paid in cash.

**9**
The Secretariat shall establish the terms governing all bank guarantees which the parties may post pursuant to the above provisions.

**10**
As provided in Article 30(2) of the Rules, the advance on costs may be subject to readjustment at any time during the arbitration, in particular to take into account fluctuations in the amount in dispute, changes in the amount of the estimated expenses of the arbitrator, or the evolving difficulty or complexity of arbitration proceedings.

**11**
Before any expertise ordered by the Arbitral Tribunal can be commenced, the parties, or one of them, shall pay an advance on costs fixed by the Arbitral Tribunal sufficient to cover the expected fees and expenses of the expert as determined by the Arbitral Tribunal. The Arbitral Tribunal shall be responsible for ensuring the payment by the parties of such fees and expenses.

**Article 2**
**Costs and Fees**

**1**
Subject to Article 31(2) of the Rules, the Court shall fix the fees of the arbitrator in accordance with the scale hereinafter set out or, where the sum in dispute is not stated, at its discretion.

**2**
In setting the arbitrator's fees, the Court shall take into consideration the diligence of the arbitrator, the time spent, the rapidity of the proceedings, and

the complexity of the dispute so as to arrive at a figure within the limits specified or, in exceptional circumstances (Article 31(2) of the Rules), at a figure higher or lower than those limits.

**3**
When a case is submitted to more than one arbitrator, the Court, at its discretion, shall have the right to increase the total fees up to a maximum which shall normally not exceed three times the fees of one arbitrator.

**4**
The arbitrator's fees and expenses shall be fixed exclusively by the Court as required by the Rules. Separate fee arrangements between the parties and the arbitrator are contrary to the Rules.

**5**
The Court shall fix the administrative expenses of each arbitration in accordance with the scale hereinafter set out or, where the sum in dispute is not stated, at its discretion. In exceptional circumstances, the Court may fix the administrative expenses at a lower or higher figure than that which would result from the application of such scale, provided that such expenses shall normally not exceed the maximum amount of the scale. Further, the Court may require the payment of administrative expenses in addition to those provided in the scale of administrative expenses as a condition to holding an arbitration in abeyance at the request of the parties or of one of them with the acquiescence of the other.

**6**
If an arbitration terminates before the rendering of a final Award, the Court shall fix the costs of the arbitration at its discretion, taking into account the stage attained by the arbitral proceedings and any other relevant circumstances.

**7**
In the case of an application under Article 29(2) of the Rules, the Court may fix an advance to cover additional fees and expenses of the Arbitral Tribunal and may make the transmission of such application to the Arbitral Tribunal subject to the prior cash payment in full to the ICC of such advance. The Court shall fix at its discretion any possible fees of the arbitrator when approving the decision of the Arbitral Tribunal.

**8**
When an arbitration is preceded by an attempt at amicable resolution pursuant to the ICC ADR Rules, one half of the administrative expenses paid for such ADR proceedings shall be credited to the administrative expenses of the arbitration.

**9**
Amounts paid to the arbitrator do not include any possible value added taxes (VAT) or other taxes or charges and imposts applicable to the arbitrator's fees. Parties have a duty to pay any such taxes or charges; however, the recovery of any such charges or taxes is a matter solely between the arbitrator and the parties.

**Article 3**
**ICC as Appointing Authority**

Any request received for an authority of the ICC to act as appointing authority will be treated in accordance with the Rules of ICC as Appointing Authority in UNCITRAL or Other Ad Hoc Arbitration Proceedings and shall be accompanied by a non-refundable sum of US$ 2,500. No request shall be processed unless accompanied by the said sum. For additional services, ICC may at its discretion fix administrative expenses, which shall be commensurate with the services provided and shall not exceed the maximum sum of US$ 10,000.

**Article 4**
**Scales of Administrative Expenses and Arbitrator's Fees**

1
The Scales of Administrative Expenses and Arbitrator's Fees set forth below shall be effective as of 1 July 2003 in respect of all arbitrations commenced on or after such date, irrespective of the version of the Rules applying to such arbitrations.

2
To calculate the administrative expenses and the arbitrator's fees, the amounts calculated for each successive slice of the sum in dispute must be added together, except that where the sum in dispute is over US$ 80 million, a flat amount of US$ 88,800 shall constitute the entirety of the administrative expenses.

## A. ADMINISTRATIVE EXPENSES

| Sum in dispute (in US Dollars) | Administrative expenses(*) |
|---|---|
| up to 50 000 | $ 2500 |
| from 50 001 to 100 000 | 3.50% |
| from 100 001 to 500 000 | 1.70% |
| from 500 001 to 1 000 000 | 1.15% |
| from 1 000 001 to 2 000 000 | 0.70% |
| from 2 000 001 to 5 000 000 | 0.30% |
| from 5 000 001 to 10 000 000 | 0.20% |
| from 10 000 001 to 50 000 000 | 0.07% |
| from 50 000 001 to 80 000 000 | 0.06% |
| over 80 000 000 | $ 88 800 |

*(*) For illustrative purposes only, the table on the following page indicates the resulting administrative expenses in US$ when the proper calculations have been made.*

## B. ARBITRATOR'S FEES

| Sum in dispute (in US Dollars) | Fees(**) | |
|---|---|---|
| | minimum | maximum |
| up to 50 000 | $ 2500 | 17.00% |

ICC International Court of Arbitration - Rules of Arbitra                                                 2/26/04 11.12 AM

|  |  |  |
|---|---|---|
| from 50 001 to 100 000 | 2.00% | 11.00% |
| from 100 001 to 500 000 | 1.00% | 5.50% |
| from 500 001 to 1 000 000 | 0.75% | 3.50% |
| from 1 000 001 to 2 000 000 | 0.50% | 2.75% |
| from 2 000 001 to 5 000 000 | 0.25% | 1.12% |
| from 5 000 001 to 10 000 000 | 0.10% | 0.616% |
| from 10 000 001 to 50 000 000 | 0.05% | 0.193% |
| from 50 000 001 to 80 000 000 | 0.03% | 0.136% |
| from 80 000 001 to 100 000 000 | 0.02% | 0.112% |
| over 100 000 000 | 0.01% | 0.056% |

(**) *For illustrative purposes only, the table on the following page indicates the resulting range of fees when the proper calculations have been made.*

| SUM IN DISPUTE<br>(in US Dollars) | A. ADMINISTRATIVE EXPENSES<br>(in US Dollars) |
|---|---|
| up to 50 000 | 2500 |
| from 50 001 to 100 000 | 2500 + 3.50% of amt. over 50 000 |
| from 100 001 to 500 000 | 4250 + 1.70% of amt. over 100 000 |
| from 500 001 to 1 000 000 | 11 050 + 1.15% of amt. over 500 000 |
| from 1 000 001 to 2 000 000 | 16 800 + 0.70% of amt. over 1 000 000 |
| from 2 000 001 to 5 000 000 | 23 800 + 0.30% of amt. over 2 000 000 |
| from 5 000 001 to 10 000 000 | 32 800 + 0.20% of amt. over 5 000 000 |
| from 10 000 001 to 50 000 000 | 42 800 + 0.07% of amt. over 10 000 000 |
| from 50 000 001 to 80 000 000 | 70 800 + 0.06% of amt. over 50 000 000 |
| from 80 000 001 to 100 000 000 | 88 800 |
| over 100 000 000 | 88 800 |

| SUM IN DISPUTE<br>(in US Dollars) | B. ARBITRATOR'S FEES<br>(in US Dollars) | |
|---|---|---|
|  | Minimum | Maximum |
| up to 50 000 | 2500 | 17.00% of amount in dispute |
| from 50 001 to 100 000 | 2500 + 2.00% of amt. over 50 000 | 8500 + 11.00% of amt. over 50 000 |
| from 100 001 to 500 000 | 3500 + 1.00% of amt. over 100 000 | 14 000 + 5.50% of amt. over 100 000 |
| from 500 001 to 1 000 000 | 7500+ 0.75% of amt. over 500 000 | 36 000 + 3.50% of amt. over 500 000 |
| from 1 000 001 to 2 000 000 | 11 250 + 0.50% of amt. over 1 000 000 | 53 500 + 2.75% of amt. over 1 000 000 |
| from 2 000 001 to 5 000 000 | 16 250 + 0.25% of amt. over 2 000 000 | 81 000 + 1.12% of amt. over 2 000 000 |
| from 5 000 001 to 10 000 000 | 23 750 + 0.10% of amt. over 5 000 000 | 114 600 + 0.616% of amt. over 5 000 000 |
| from 10 000 001 to | 28 750 + 0.05% of amt. | 145 400 + 0.193% of amt. |

ICC International Court of Arbitration - Rules of Arbitra.                                    2/26/04 11.12 AM

| 50 000 000 | over 10 000 000 | over 10 000 000 |
|---|---|---|
| from 50 000 001 to 80 000 000 | 48 750 + 0.03% of amt. over 50 000 000 | 222 600 + 0.136% of amt. over 50 000 000 |
| from 80 000 001 to 100 000 000 | 57 750 + 0.02% of amt. over 80 000 000 | 263 400+ 0.112% of amt. over 80 000 000 |
| over 100 000 000 | 61 750 + 0.01% of amt. over 100 000 000 | 285 800 + 0.056% of amt. over 100 000 000 |

**HOME | INTRODUCING THE COURT | SITE SEARCH | SITE MAP | ICC**