IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 1 6 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ACEROS Y LAMINADOS SIGOSA, S.A. DE C.V. | § § § | |
| Plaintiff | § § | |
| vs. | § § | CIVIL ACTION NO. B-04-031 (Assigned to Hon. Hilda G. Tagle) |
| DUFERCO S. A. AND DUFERCO STEEL, INC. | § § § § | |
| Defendants | § § | |

## PLAINTIFF'S RESPONSE AND MEMORANDUM OF AUTHORITIES IN OPPOSITION TO THE DEFENDANTS' MOTION TO COMPEL ARBITRATION

NOW COMES Aceros Y Laminados Sigosa S. A. de C.V., Plaintiff and files this response and memorandum of authorities in opposition to the Defendants' Motion to Compel Arbitration simultaneously with its separate motion to remand and would respectfully show the Court the following:

I.

Plaintiff Aceros Y Laminados Sigosa, S. A. de C. V. (hereinafter at times referred to as Plaintiff or Aceros) would show that the test in the Fifth Circuit for determining a motion to compel arbitration has been set out in numerous cases. First, Plaintiff would note that under Title 9, USCA there are three chapters. Chapter 1 starting at Section 1 deals with the Federal Arbitration Act. Chapter 2 starting at Section 201 deals with the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. This Chapter 2 is the basis upon which Defendants removed the case from state court to federal court. The Fifth Circuit has addressed cases under both chapters, including a

case dealing with Chapter 1 of Title 9, USCA Section 4, which originated out of this Honorable Court and went to the Fifth Circuit. That case was *Rio Grande Underwriters, Inc. vs. Pitts Farms, Inc.* 276 F. 3d 683 (Fifth Circuit, 2001). Although the removal here was under Chapter 2 some of the legal principles involved can be found in Fifth Circuit cases both under Chapters 1 and Chapter 2. These will be discussed further herein.

## II.

Defendants have asserted on page 6 of their memorandum of law in support of the motion to compel arbitration that the arbitration clause in question is based upon "the standard ICC arbitration clause", which is set forth in the ICC rules, which is attached as Exhibit "B" to Defendant's memorandum of law. For this Court's convenience the clause concerning arbitration in the contract is set out herein,

> The parties will endeavour to the fullest extent to settle any controversy arising out of the present contract in an amicable way. In case it is not possible to find an amicable settlement, then the controversy will be resolved through arbitration to be conducted
> in accordance with conciliation and arbitration rules of the International Chamber of Commerce.
> Place of Arbitration: Geneve.
> The award of the arbitrators shall be final and binding on the parties.

Exhibit B to Defendants memorandum of law which are the ICC rules contains on pages 4 and 5 references to the standard ICC Arbitration Clause. Starting this discussion under the Section that reads "Standard ICC Arbitration Clause, it notes on page 4 the following: "The ICC recommends that all parties wishing to make reference to ICC arbitration in their contracts use the following standard clause." Going on it sets out the ICC standard clause beginning at the bottom of page 4 and continuing on page 5 as follows:

> All disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules.

A comparison of the arbitration clause between Aceros and Duferco with the standard ICC arbitration clause clearly reflects some glaring differences. First of all, the Aceros/Duferco arbitration clause in question talks in terms "to settle any controversy arising out of the present contract." The standard ICC clause talks in terms of "disputes arising out of or in connection with the present contract." The phrase "or in connection with" is glaringly missing from the arbitration clause in question. The arbitration clause in question does not say who will name the arbitrators. The standard ICC clause says "one or more arbitrators appointed in accordance with the said Rules." The arbitration clause in question does not say how many arbitrators shall be appointed. The arbitration clause in question does not give a complete location of arbitration. It says Geneve. One might assume it is Switzerland, but it is not clear.

The observations by the Defendants that two prior contracts exited does not help Defendants any. If anything, those two prior contracts attached to Defendants' memorandum as Exhibit "C" show that those arbitration clauses were also narrow restricted language and that Duferco consistently used this narrow restricted language as opposed to the broader language found in the standard ICC clause. Those prior contracts never resulted in a dispute or lawsuit like this one.

## III.

The Fifth Circuit has consistently set out what a Court should look at when looking at a motion to compel arbitration. In *Personal Security and Safety Systems, Inc. vs. Motorola*, 297 F. 2d 388 (Fifth Circuit, 2002), the Fifth Circuit noted at page 392: "To ascertain whether the parties have agreed to arbitrate a particular claim, we must determine, (1) whether there is a valid agreement to arbitrate between the parties; (2) whether the dispute in question falls within the scope of that arbitration agreement." In *Motorola*, *supra*, the Fifth Circuit reversed and remanded the District Court's order denying arbitration because the arbitration clause in question in that case was broad enough to order arbitration. The Fifth Circuit in *Motorola* at page 393 went on to say as follows:

> Where, as here, an arbitration provision purports to cover all
> disputes "related to" or "connected with" the agreement, we

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF AUTHORITIES**
**IN OPPOSITION TO THE DEFENDANTS' MOTION TO COMPEL**
**ARBITRATION**                                                      Page 3

have held that the provision is "not limited to claims that literally 'arise under the contract,' but rather embrace(s) all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pennzoil Exploration and Production Co. v. Ramco Energy Ltd.*, 139 F. 3d 1061, 1067 (Fifth Circuit 1998)

Also see, *Fleetwood Enterprises, Inc. vs. Gaskamp*, 280 F. 3d 1069 (Fifth Circuit, 2002). Also see *OPE International LP vs. Chet Morrison Contractors, Incorporated*, 258 F. 3d 443 (Fifth Circuit, 2001). As was shown hereinabove the narrow limited language in the arbitration clause between Aceros and Duferco is much narrower and limited in scope than the broader language set out in the Standard ICC Clause. The language in Aceros/Duferco does not use any phrase such as, "related to", "connected with" or "in connection with." The Court in *Motorola, supra* when talking about arbitration also noted at page 392 the following: "Of course, this general policy is not without limits. Because arbitration is necessarily a matter of contract, courts may require a party to submit a dispute to arbitration only if the party has expressly agreed to do so." In *Motorola, supra*, the arbitration provision purported to cover all disputes "related to" or "connected with" the agreement. See *Motorola, supra* at page 393. In the instant situation of Aceros here, it is clear that the arbitration clause did not intend to cover everything by looking at the language on its face. The standard clause of ICC talks in terms of "arising out of and in connection with." The arbitration clause by Aceros/Duferco only talks about to settle any controversy "arising out of the present contract."

The allegations made by the Plaintiff Aceros are more specifically set out in its first amended petition filed in state court and more specifically reference is made to Sections 5, 6 and 7. The internal defective materials manifested itself after the finished products were rejected and returned by at least one customer in the United States causing Plaintiff Aceros considerable economic damages and diminution of business from this customer. These were not claims, which Aceros agreed to be arbitrated. Attached hereto and incorporated herein by reference is Exhibit "1," an affidavit by Gustavo Elizondo, authorized representative for the Plaintiff Aceros, which clearly states that the claims and causes of action raised in Plaintiff's First Amended Original Petition

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF AUTHORITIES**
**IN OPPOSITION TO THE DEFENDANTS' MOTION TO COMPEL**
**ARBITRATION**                                                                     **Page 4**

were not the type considered to be handled under the arbitration clause between Aceros and Duferco. The affidavit also points out that the language in the arbitration clause between Aceros and Duferco found in Section 15 in the sales order was prepared by Duferco and was not language prepared by Aceros. Therefore, Duferco itself was making the arbitration clause more narrow and restrictive than the broader standard ICC clause.

The Fifth Circuit in the case of *Will – Drill Resources, Inc. vs. Samson Resources Co.* dealt with an issue of arbitration under Chapter 1 of Title 9, Section 1. This case is found at 352 F. 3d. 211 (Fifth Circuit, 2003). In *Samson Resources, supra* the Fifth Circuit held that it is for the court and not an arbitrator to decide whether there is agreement to arbitrate. In *Samson Resources, supra* at page 218 the Fifth Court noted:

> We reject the argument that where there is a signed document containing an arbitration clause which the parties do not dispute they signed, we must presume that there is a valid contract and send any general attacks on the agreement to the arbitrator.

Also see the case of *Bridas S. A. P. I. C.; Bridas Energy International, Ltd, et. al. vs. Government of Turkmenistan*, 345 F. 3d 347 (Fifth Circuit, 2003) where the Fifth Circuit noted on page 353 as follows:

> ...The district court's interpretation of the arbitration agreement, and whether it bound the parties to arbitrate, is a question of law. R.M. Perez & Assoc., Inc. v. Welch, 960 F.2d 534, 537 (5th Cir. 1992). ..

In this case we have the issue of whether there is an agreement to arbitrate the issues in dispute here. The Plaintiff's Aceros claims here do not fall within the scope of the arbitration clause. Plaintiff Aceros position that the claims in its lawsuit do not fall within the scope of the arbitration clause is a proper inquiry for this Honorable Court. It is clear that whether the claims raised by Aceros in its lawsuit are subject to arbitration is a matter for this Court and not the arbitrator. The attached affidavit Exhibit "1" clearly shows that the disputes in question here are not covered by the arbitration clause, which again has been clearly shown does not even track the standard ICC clause and

has some glaring differences from the standard ICC clause, which make the clause in question more narrow and restrictive than the broader standard ICC clause.

## IV.

The Fifth Circuit recognizes the four factors that are looked at by courts under Chapter 2, the Convention Act of Title 9, for deciding whether to compel arbitration. The Fifth Circuit has recognized these four factors in many cases. For example, see *Francisco vs. Stolt Achievement Mt.*, 293 F. 3d. 270 (Fifth Circuit, 2002) See the discussion of this at page 272 and 273. See also, for example, *Sedco, Inc. vs. Petroleos Mexicanos* (PEMEX) 767 F. 2d 1140 (Fifth Circuit, 1985). Although *Francisco, supra,* is not directly in point it is interesting to note that the party moving to deny arbitration did argue that claims were not covered or did not fall within the scope of the arbitration clause. In *Francisco*, the Fifth Circuit found that the arbitration provision was not limited to contract claims but also covered tort claims. However, the point is that the Fifth Circuit did consider in this Chapter 2 case whether the claims in question fell within the scope of this particular arbitration clause, which concerned an employment contract as opposed to a sales contract as here.

In *McDermott International, Inc. vs. Lloyds Underwriters of London*, 944 F. 2d 1129 (Fifth Circuit 1991), the Fifth Circuit discussed the inner play or connection between Chapter 1 and Chapter 2 of Title 9 at pages 106-1207 and noted the following:

> In 1970, Congress ratified the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the Convention) to secure for United States citizens predictable enforcement by foreign governments of certain arbitral contracts and awards made in this and other signatory nations. See 21 U.S.T. 2517, T.I.A.S 6997, reprinted following 9 U.S.C.A. § 201 (West Supp. 1991). To gain rights under the Convention, though, Congress had to guarantee enforcement or arbitral contracts and awards made pursuant to the convention in United States courts. See *1208 Convention Art. XIV ("A Contracting State shall not be entitled to avail itself of the present convention against other Contracting States except to the extent that it is itself bound to apply the Convention.") So Congress promulgated the Convention Act in 1970 to establish

> procedures for our courts to implement the Convention. 9
> U.S.C. § 201, et. seq.
>
> The Federal Arbitration Act (FAA), 9 U.S.C. §1, et. seq. is
> the approximate domestic equivalent of the Convention; it
> guarantees enforcement of domestic arbitral contracts and
> awards, but with slightly different rules of applicability. To
> avoid possible interference with the well-settled
> jurisprudence construing the FAA, Congress enacted new
> legislation in the Convention Act rather than amending the
> FAA. The Convention Act incorporates the FAA except
> where the FAA conflicts with the Convention Act's few
> specific provisions. Senate Comm. on Foreign Relations,
> Foreign Arbitral Awards, S. Rep. No. 702, 91st Cong., 2d
> Sess. 5 (1970), US.S. Code Cong. & Admin. News 1970, p.
> 3601; 9 U.S.C. §208.

The first factor under the Convention Act still requires an agreement in writing to arbitrate the dispute and this factor requires that the dispute in question fall within the scope of the arbitration clause as shown in cases hereinabove and hereinafter. Plaintiff vigorously contests that the first factor of the four factors that this Court should look at when considering the motion to compel arbitration is met by Defendants. On the contrary, Plaintiff respectfully submits and vigorously contests that there is an agreement in writing to arbitrate the particular claims raised by Aceros. As has been shown hereinabove, there is no clear agreement in writing to arbitrate the claims which form the basis of the Plaintiff's lawsuit. Again, reference is made to Exhibit "1", the affidavit by an authorized representative of the Plaintiff reflecting that the claims made herein are not covered by the arbitration clause. The case law in the Fifth Circuit as shown here is abundantly clear that even under this first factor this Honorable Court must make a determination that the claims in question fall within the scope of the arbitration clause. Plaintiff again respectfully submits that the claims in question do not fall within the scope of the narrow arbitration clause between Aceros and Duferco.

## V.

It is clear that the arbitration provision in question is a narrow arbitration provision, which does not even track the broader language found in the standard ICC

clause. This Honorable Court should not compel arbitration unless it clearly determines that the dispute clearly falls within the arbitration clause. Defendants have failed to carry their burden to show that this particular dispute falls under the terms of the narrow, restrictive arbitration clause.

## VI.

As shown clearly herein above, a determination has to be made whether the dispute in question falls within the scope of the arbitration agreement. However, other considerations are whether any federal statute or policy renders the claims nonarbitrable. There is a discussion of this in the case of *Samson Resources*, *supra*, at page 214 where the court notes the following:

> [1][2][3][4][5] We reviewed de novo the grant or denial of a petition to compel arbitration pursuant to § 4 of the FAA. [FN4]Courts perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute. "First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable." [FN5] When considering the first question, there are two considerations: "'(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" [FN6] Although there is a strong federal policy favoring arbitration, "this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." [FN7] "Because the FAA is at bottom a policy guaranteeing the enforcement of private contractual arrangements, we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." [FN8] In determining whether an agreement to arbitrate exists, we apply "ordinary contract principles." [FN9]

## VII.

Even under the four factors to be considered under the Convention, the first factor still needs to be determined under all the Fifth Circuit authority as to whether the dispute in question falls within the scope of the arbitration agreement. There are

numerous cases discussing the four factors.  Plaintiff points out one case here to show that the district court must determine whether the arbitration clause covers the dispute in question under the first factor considered under the Convention.  The case of *Continental Insurance Company v. Jantran, Inc.*, 906 F. Supp. 362 (E.D. Louisiana 1995) was decided under Chapter 2, the Convention Act.  The district court discussed the application of the four factors, which had previously been set out in cases such as; *Sedco*, *supra*.  In *Continental*, the district court referring to the *Sedco* case pointed out the following:

> In Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co. (Pemex) 767 F2d 1140 (5th Cir. 1985), the Fifth Circuit clarified the ground rules regarding arbitration clauses under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201-208 ("the Convention").  In Sedco, a limited inquiry into four factors to determine the propriety of arbitration under the Convention was recognized:
> 1. Is there an agreement to arbitrate the dispute or is the agreement broad or narrow;
> *366 2. Does the agreement provide for arbitration in the territory of a Convention signatory;
> 3. Does the agreement to arbitrate arise out of a commercial legal relationship;
> 4. Is a party to the agreement not an American citizen.

In *Continental*, *supra*, the limited inquiry that a district court must make was discussed and the focus there was on the first factor of "whether there is an agreement to arbitrate the dispute or is the agreement broad or narrow."  As shown here the claims raised by the Plaintiff clearly fall outside the scope of the narrow arbitration clause.  For example, in *Continental*, the arbitration clause there used the language, "arising out of or in connection with," which is the standard ICC clause language, which is much broader language than the Aceros/Duferco clause in question, which Duferco itself prepared.

## VIII.

Defendant Duferco Steel's request to arbitrate also depends on the validity of the arbitration clause between the Plaintiff Aceros and the Defendant Duferco since it has

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF AUTHORITIES**
**IN OPPOSITION TO THE DEFENDANTS' MOTION TO COMPEL**
**ARBITRATION**                                                                                 **Page 9**

c:\dcg\cl\Sigosa\Plaintiffs-Response-in-Opposition

clearly been shown that the arbitration clause does not cover the dispute in question. Therefore the Defendant Duferco Steel is not entitled to arbitrate its claims either. Plaintiff never has to reach the issue of equitable estoppel raised by the Defendants as a basis for arbitration by Duferco Steel since again it has been shown that the arbitration clause does not cover the dispute in question. Nevertheless, the issue of whether to use equitable estoppel is within a District Court's discretion. See *Bridas, supra*, at page 360.

## IX.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Aceros y Laminados Sigosa, S. A. de C. V. respectfully requests the following relief:

1 - Subject to Plaintiff's motion to remand, that this Honorable Court deny the Defendants' motion to compel arbitration.

2 - Any other relief to which the Plaintiff may be entitled either in law or in equity.

Respectfully Submitted,
**ACEROS Y LAMINADOS SIGOSA, S. A. DE C. V., Plaintiff**

By: David C. Garza
Texas State Bar ID No. 0731400
Southern District Federal Admission
No. 3778
GARZA & GARZA,L.L.P.
P.O. Box 2025
680 East St. Charles, Suite 300
Brownsville, Texas 78522-2025
Telephone: (956) 541-4914
Facsimile: (956) 542-7403
Attorney-In-Charge for Plaintiff
**ACEROS Y LAMINADOS SIGOSA, S. A. DE C. V.**

PLAINTIFF'S RESPONSE AND MEMORANDUM OF AUTHORITIES
IN OPPOSITION TO THE DEFENDANTS' MOTION TO COMPEL
ARBITRATION                                             Page 10

c:\dcg\cl\Sigosa\Plaintiffs-Response-in-Opposition

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO THE DEFENDANTS' MOTION TO COMPEL ARBITRATION** was served on the following counsel of record, as follows on March _16th_, 2004.

Norton A. Colvin, Jr.                          Via Certified Mail/RRR
Rodriguez, Colvin, Chaney & Saenz, LLP         No. 7003 1010 0003 6965 2599
P.O. Box 2155
Brownsville, Texas 78522

Robert P. Stein                                Via Certified Mail/RRR
Greenberg Traurig, LLP                         No. 7003 1010 0003 6965 2605
885 Third Avenue
New York, New York 10022-4834

_____
DAVID C. GARZA

PLAINTIFF'S RESPONSE AND MEMORANDUM OF AUTHORITIES
IN OPPOSITION TO THE DEFENDANTS' MOTION TO COMPEL
ARBITRATION                                                      Page 11

c:\dcg\cl\Sigosa\Plaintiffs-Response-in-Opposition

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

---

| | | |
|---|---|---|
| ACEROS Y LAMINADOS SIGOSA, S.A. DE C.V. | §<br>§<br>§ | |
| Plaintiff | §<br>§ | |
| | § | CIVIL ACTION NO. B-04-031 |
| vs. | §<br>§ | (Assigned to Hon. Hilda G. Tagle) |
| DUFERCO S. A. AND DUFERCO STEEL, INC. | §<br>§<br>§ | |
| | § | |
| Defendants | § | |

## AFFIDAVIT OF GUSTAVO ELIZONDO

STATE OF TEXAS          §

COUNTY OF CAMERON  §

I, Gustavo Elizondo, being duly sworn and depose say;

1 -    I am over 18 years of age. I have never been convicted of a crime and I am competent to make this affidavit. The factual statements in this affidavit are based on my personal knowledge and are true and correct.

2 -    I was the authorized representative for Aceros Y Laminados Sigosa S. A. de C. V. (hereinafter at times "Aceros") the Plaintiff in the above captioned case, when I signed the three page sales order confirmation, which is attached as Exhibit "A" to the Plaintiff's First Amended Original Petition and a copy of which is attached hereto to my affidavit as Exhibit "A". I am also authorized by Aceros y Laminados Sigosa S. A. de C. V. to execute this affidavit on its behalf.

---

**AFFIDAVIT OF GUSTAVO ELIZONDO**

c:\dcg\cl\Sigosa\Affidavit-Gustavo-Elizondo



Page 1

3 -    I have read Plaintiff's First Amended Original Petition filed in state court. I am familiar with the claims and causes of action that Plaintiff Aceros has raised in said First Amended Original Petition.

4 -    I have also read the Plaintiff Aceros Y Laminados Sigosa, S. A. de C. V. response and memorandum of authorities in opposition to Defendants' motion to compel arbitration.

5 -    The claims asserted by the Plaintiff Aceros in its First Amended Original Petition are clearly not covered by the narrow arbitration clause found in Section 15 of the sales order attached hereto as Exhibit A.  That narrow arbitration clause was limited to matters in the sales order confirmation such as: price, shipment, quantity and quality as stated in the order confirmation, Exhibit "A."  It does not cover any dispute arising from defective materials, which were transformed into finished products, then were sold and delivered to customers and which then manifested internal defects which resulted in subsequent economic damages and consequential damages to the Plaintiff, including the apparent loss of at least one customer in the United States.

6 -    The sales order attached here as Exhibit A and more specifically the limited, narrow arbitration clause found in Section 15 of the sales order was prepared by representatives of the Defendant Duferco S. A. and the language contained in that arbitration clause was put in there by the representatives of the Defendant Duferco S. A.

7 -    The sales order agreement was not reviewed by any attorney, whether a U. S. attorney, Swiss attorney or Mexican attorney on behalf of Plaintiff Aceros prior to my executing the sales order agreement.  I am not an attorney. The arbitration clause as drafted is narrow.  It only referred to the present contract and dealt with matters such as, price, quantity, time and quality as set out and stated specifically in Exhibit "A".  I understood the arbitration clause to only cover these items set out in the "present contract."

8 -    The sales agreement "Exhibit A" attached notes on the first page that it is an "order confirmation."  The order confirmation further notes in Section 13 concerning claims as to quantity or quality under the "present contract" must be presented within 60-days from vessel's arrival at port of destination.  Plaintiff Aceros did communicate

**AFFIDAVIT OF GUSTAVO ELIZONDO**                                    **Page 2**

c:\dcg\d\Sigosa\Affidavit-Gustavo-Elizondo

with Duferco concerning certain quality issues within 60-days from the vessel's arrival at its port of destination in Brownsville, Texas on or about July 4, 2002. However, these quality issues were those arising specifically under the terms of the order confirmation and did not cover the quality issues which later surfaced beyond the 60-days and subsequently became known to Plaintiff through its customers. Quality defects could be of bowed or cambered steel billets, which one could observe with the naked eye. Again, the quality and quantity issues were designated in the sales order confirmation in Sections 1, 2, 3 and 4 and could be the matters covered under Section 13 and possibly subject to the arbitration clause under 15. However, the claims for damages pursued by Aceros in its lawsuit do not arise out of the present contract with Duferco.

9 -    The claims and suit by Plaintiff Aceros deal with economic damages and apparent loss of customer(s) and/or lessening of sales to some customers because of internal defects in the material provided by Duferco, which were not manifested until complaints came from customers about internal defects in the product as they began to process the finished product for use after it had been shipped to and received by these customers. One customer located in the United States returned the product because of the internal defects in it, which only manifested themselves after the product was being processed by said customer.

10 -    The arbitration clause in question and the sales order confirmation in its entirety does not cover all potential claims, which could arise under the sales order, but only those specific items under the present contract. The arbitration clause itself in section 15 talks only about any controversy "arising out of the present contract."

FURTHER AFFIANT SAYETH NAUGHT.

_____
Gustavo Elizondo

BEFORE ME THE, undersigned authority, on this ___*16th*___ day of March personally appeared Gustavo Elizondo who identified himself to me, and who after being duly sworn stated to me that the statements herein are true and correct, and subscribed his name to this affidavit.



*Veronica Rendon*
Notary Public in and for
the State of Texas

My commission expires: ___11/06___

**AFFIDAVIT OF GUSTAVO ELIZONDO**                    **Page 4**

c:\dcg\d\Sigosa\Affidavit-Gustavo-Elizondo



**Duferco**

Mesrs.
ACEROS Y LAMINADOS. SIGOSA, S.A DE C.V,
PROLONGACION AV. UNIONES NC. 100
FRACC. INDUSTRIAL DEL NORTE
H. MATAMOROS, TAM. 87340
MEXICO

SO-1101001001    MARCH 20, 2002

## ORDER CONFIRMATION

| | |
|---|---|
| **1.MATERIAL:** | PRIME HOT ROLLED STEEL BILLETS ACCORDING TO GOST STANDARD |
| **2.QUALITY:** | SGPS ACCORDING TO GOST 380-94 = CHEMICAL composition: C = 0.22- 0.30, Mn = 0.80- 1.20, Si = 0.15 MAX. |

**3.SIZE/LENGTH:**

| | | |
|---|---|---|
| 1,000 MT | 150 X 150 MM (+/-3MM) X 10,000 MM (+ 100MM) | (- 0 MM) |
| 1,000 MT | 150 X 150 MM (+/-3MM) X 10,400 MM (+ 100MM) | (- 0 MM) |
| 2,500 MT | 150 X 150 MM (+/-3MM) X 11,200 MM (+ 100MM) | (- 0 MM) |
| 2,500 MT | 150 X 150 MM (+/-3MM) X 11,500 MM (+ 100MM) | (- 0 MM) |
| 3,000 MT | 150 X 150 MM (+/-3MM) X 11,800 MM (+ 100MM) | (- 0 MM) |
| 10,000MT | | |
| 5,000 MT | 100 X 100 MM (+/-3MM) X 6'000 MM (+ 100MM) | (- 0 MM) |

**4.TOTAL QUANTITY:** 15,000 MT (+/- 10PCT)

**5.ORIGIN:** RUSSIA

**6.SHIPMENT:** MAY / BEGINNING OF JUNE 2002
FROM ANY BLACK SEA OR BALTIC SEA PORT

**7.DESTINATION:** BROWNSVILLE / TAMPICO / ALTAMIRA
TEXAS, U.S.A.

**8.MARKING:** HEAT NO. / SIZE PAINTED ON THE END OF EACH BILLET

**9.PACKING:** IN BUNDLES OF MAX. 8.5MT – FOR MATERIAL IN SIZE 150X150
IN BUNDLES OF MAX. 7MT - FOR MATERIAL IN SIZE 100X100

**10.PRICE:** 188USD/MT CFR BROWNSVILLE FULL LINER TERMS FIRST PLACE REST; WHARFAGE PAID

**11.INVOICING:** ACTUAL WEIGHT SHIPPED

**12.PAYMENT** BY IRREVOCABLE AND CONFIRMED LETTER OF CREDIT PAYABLE 45 days FROM B/L DATE TO BE OPENED WITHIN APRIL 5, 2002 FROM ANY FIRST CLASS MEXICAN BANK AND TO BE ADVISED ON BNP PARIBAS GENEVA, SWITZERLAND IN FAVOUR OF:



EXHIBIT
A



**Duferco**

DUFERCO S.A.
VIA BAGUTT
6901 LUGANO
SWITZERLAND

DOCUMENTS TO BE PRESENTED:
- COMMERCIAL INVOICE INCLUDING NUMBER OF BUNDLES
- FULL SET OF BILL OF LADING TO THE ORDER OF THE L/C OPENING BANK NOTIFY TO
  SIQOSA
  PACKING LIST
- CERTIFICATE OF ORIGIN

- LATEST SHIPMENT DATE JUNE 12, 2002
  VALIDITY JULY 3, 2002
- DISCHARGING PORTS ALLOWED:
  BROWNSVILLE, TX USA, FOR FINAL DESTINATION MEXICO
- STALE DOCUMENTS ACCEPTABLE
- CHARTER PARTY B/L ACCEPTABLE
- PARTIAL SHIPMENT ALLOWED
- THIRD PARTY DOCUMENTS ACCEPTABLE
- BILL OF LADING CLAUSED "ATMOSPHERIC RUST, STOCKED AT OPEN AREA, UNPROTECTED" OR SIMILAR WORDS ACCEPTABLE
- L/C TO INDICATE "SPELLING OR TYPING ERRORS NOT AFFECTING FIGURES ARE NOT CONSIDERED DISCREPANCIES"
- MILL'S TEST QUALITY CERTIFICATES SHOWING CHEMICAL COMPOSITION OF EACH HEAT TO BE PROVIDED OUTSIDE L/C TO BE SENT TO CUSTOMER VIA AIR COURIER WITHIN 14 DAYS AFTER BILL OF LADING DATE.
- CONFIRMATION COST TO BE FOR SELLER'S ACCOUNT
- T/T REIMBURSEMENT ALLOWED

**13. CLAIMS:** CLAIMS, DULY SUPPORTED BY INTERNATIONAL SURVEY CERTIFICATES MUST BE PRESENTED FROM BUYER TO SELLER WITHIN 45 DAYS FROM VESSEL'S ARRIVAL AT PORT OF DESTINATION. 60

A) QUANTITY CLAIM: A FRANCHISE OF +/-0.3% IS ALLOWED: IN CASE OF OVERAGE/SHORTAGE, SELLER/BUYER TO BE COMPENSATED ONLY FOR THE WEIGHT EXCEEDING THE +/-0.3% FRANCHISE. SURVEY REPORT TO BE PRESENTED TO THE SELLER NOTWITHSTANDING SHORTAGE/OVERSHIPMENT WITHIN 0.3% FRANCHISE.

B) QUALITY CLAIM: CLAIMED MATERIAL MUST BE HELD AT SUPPLIER'S DISPOSAL AND ACCESSIBLE FOR INSPECTION.

Exhibit A



**Duferco**

**14. PROPER LAW:**  THE FORMATION, VALIDITY, CONSTRUCTION AND PERFORMANCE OF THIS CONTRACT ARE GOVERNED BY THE LAWS OF SWITZERLAND.

**15. ARBITRATION:**  THE PARTIES WILL ENDEAVOUR TO THE FULLEST EXTENT TO SETTLE ANY CONTROVERSY ARISING OUT OF THE PRESENT CONTRACT IN AN AMICABLE WAY. IN CASE IT IS NOT POSSIBLE TO FIND AN AMICABLE SETTLEMENT, THEN THE CONTROVERSY WILL BE RESOLVED THROUGH ARBITRATION TO BE CONDUCTED
IN ACCORDANCE WITH CONCILIATION AND ARBITRATION RULES OF THE INTERNATIONAL CHAMBER OF COMMERCE.
PLACE OF ARBITRATION: GENEVE
THE AWARD OF THE ARBITRATORS SHALL BE FINAL AND BINDING ON THE PARTIES.

**16. FORCE MAJEURE:**  THE SELLER AND THE BUYER CANNOT BE HELD RESPONSIBLE FOR ANY DELAY OR FAILURE TO COMPLY WITH THIS CONTRACT AS A RESULT OF STRIKES, FIRES, FLOODS, ACCIDENTS TO TRANSPORTATION OR INSTALLATIONS, EXPLOSIONS, REVOLUTIONS, CIVIL OR MILITARY COMMOTION'S OR ANY OTHER ACCIDENTS OF SIMILAR NATURE. IN CASE OF SUCH CONTINGENCIES, THE PARTY INCAPABLE OF COMPLYING, EITHER PARTIALLY OR TOTALLY, WITH THE DISPOSITIONS OF THIS CONTRACT, SHALL NOTIFY, IN WRITING TO THE OTHER PARTY WITHIN 48 HOURS (NOT COUNTING SATURDAYS, SUNDAYS OR HOLIDAYS) OF ITS OCCURRENCE AND CONFIRM IT WITHIN NEXT 7 DAYS THROUGH A CERTIFICATE ISSUED BY A GOVERNMENT AGENCY OR BY THE LOCAL CHAMBER OF COMMERCE. IN THIS CASE THE TIME OF FULFILMENT OF THE CONTRACT OBLIGATIONS IS EXTENDED FOR THE PERIOD EQUAL TO THAT DURING WHICH SUCH CIRCUMSTANCES LAST.
IN CASE ABOVE CONTINGENCIES LAST OVER 2 MONTHS, THEN THE SELLER AND/OR THE BUYER HAVE THE RIGHT TO TERMINATE THE CONTRACT.
THIS CLAUSE SHALL NOT APPLY TO ANY PAYMENT OBLIGATION OF EITHER OF THE PARTIES.

**17. MISCELLANEOUS**  ANY CHANGES TO THE PRESENT CONTRACT WILL BE BINDING FOR BOTH PARTIES ON CONDITION THEY WERE ACCEPTED IN WRITTEN FORM BY BOTH SIDES. NEITHER PARTY HAS THE RIGHT WITHOUT THE CONSENT OF THE OTHER PARTY TO PASS THE PRESENT CONTRACT TO A THIRD PARTY. THIS CONTRACT HAS BEEN DRAWN IN ENGLISH LANGUAGE IN TWO ORIGINALS.
IN ALL CORRESPONDENCE BOTH PARTIES SHOULD REFER TO THIS CONTRACT NUMBER.

SIGOSA S.A. DE C.V.
(THE BUYER)

FOR ACCEPTANCE

DUFERCO SA
(THE SELLER)